IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

NO. 01-21121

_____

GREAT PLAINS TRUST COMPANY and KORNITZER CAPITAL MANAGEMENT, INC.,
Individually and on Behalf of All Persons Similarly Situated,

Plaintiffs-Appellants,

versus

MORGAN STANLEY DEAN WITTER & CO., DAVID LUMPKINS, and IAN PEREIRA,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

December 9, 2002

Before SMITH and BENAVIDES, Circuit Judges, and FITZWATER, District Judge.[*]

FITZWATER, District Judge:

We are called upon to decide a second time whether Morgan Stanley Dean Witter & Co. ("Morgan Stanley") and its employees can be held liable to third parties for a due diligence investigation that Morgan Stanley performed and for a fairness opinion that it provided as a financial advisor to its client, Allwaste, Inc. ("Allwaste"), concerning Allwaste's proposed merger with Philip Services Corporation ("Philip"). In *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir.

_____

[*]District Judge of the Northern District of Texas, sitting by designation.

2000), we upheld the Fed. R. Civ. P. 12(b)(6) dismissal of a suit by holders of Allwaste stock options against Morgan Stanley and one of its employees, Ian C.T. Pereira ("Pereira"). In the present action-- filed in state court and removed to federal court--plaintiffs are Allwaste debenture holders who have sued not only Morgan Stanley and Pereira, but also Morgan Stanley employee David B.D. Lumpkins ("Lumpkins"), a Texas citizen. We must decide whether the district court erred in denying plaintiffs' motion to remand on the ground that Lumpkins had been fraudulently joined and in granting judgment on the pleadings under Rule 12(c) dismissing their claims. We hold that the district court did not err, and we affirm.

I

Plaintiffs Great Plains Trust Company and Kornitzer Capital Management, Inc. brought this putative class action against Morgan Stanley, Lumpkins, and Pereira in Texas state court based on claims arising from their conduct concerning a proposed merger of Allwaste and Philip. Plaintiffs are holders of Allwaste convertible debentures who sought to sue on behalf of themselves and certain other debenture holders.

Allwaste entered into a letter agreement ("Letter Agreement") with Morgan Stanley, an investment banker, to advise it concerning a contemplated transaction in which Allwaste and Philip would be merged into a new company to be owned by Philip. Allwaste shareholders would receive Philip common stock in exchange for their shares. Lumpkins, the Managing Director of Morgan Stanley's Houston office, sought Allwaste's business and signed the Letter Agreement on Morgan Stanley's behalf. Morgan Stanley agreed to provide Allwaste financial advice and assistance, including tactical strategy, valuation analysis, and assistance in structuring, planning, and negotiating the transaction. If the merger was consummated, Morgan Stanley would earn a transaction fee of at

least $3 million. If not, it would likely receive an advisory fee between $100,000 and $200,000.

The Letter Agreement specified that, at Allwaste's request, Morgan Stanley would provide a financial opinion letter to the company's Board of Directors concerning the fairness of the consideration (i.e., the number of shares of Philip common stock) that Allwaste's shareholders were to receive. The Letter Agreement also stated that "Morgan Stanley will act under this letter agreement as an independent contractor with duties solely to Allwaste." It provided that "[a]ny advice or opinions provided by Morgan Stanley may not be disclosed or referred to publicly or to any third party except in accordance with our prior written consent."

Morgan Stanley later issued two opinion letters ("Opinion Letters" or, collectively, the "Fairness Opinion"). On March 5, 1997 Morgan Stanley issued an Opinion Letter in which it opined that the merger was fair from a financial point of view. It expressed no view or recommendation concerning whether Allwaste stockholders should approve the merger. Morgan Stanley stated that, for purposes of its opinion, it had assumed and relied upon, without independent verification, the accuracy and completeness of information supplied or otherwise made available by Allwaste and Philip. Like the Letter Agreement, the Fairness Opinion contained a restriction on disclosure of Morgan Stanley's opinions. Each letter stated that the opinion was "for the information of the Board of Directors of the Company only and may not be used for any other purpose without [Morgan Stanley's] prior written consent, except that this opinion may be included in its entirety in any filing made by Allwaste with the Securities and Exchange Commission in connection with the Merger." On June 24, 1997 Morgan Stanley issued a second Opinion Letter in which it reached the same conclusion and set out the same limitations. Pereira, the principal in Morgan Stanley's Houston office who was primarily responsible for the Allwaste engagement, signed both letters.

- 3 -

Following the merger, Philip revealed that, for several years, its financial statements had been inaccurate. The value of Philip's stock and of the debentures declined sharply. Plaintiffs sued Morgan Stanley, Lumpkins, and Pereira in Texas state court for negligence, gross negligence/malice, negligent misrepresentation, breach of fiduciary duty, fraud, violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-17.826 (Vernon 1987 & Supp. 2002), professional negligence, and breach of contract. They alleged that, in opting not to exercise their right to redeem their debentures for cash upon consummation of the merger, they and other debenture holders had relied on defendants' representations concerning the fairness of the Allwaste-Philip merger; that Morgan Stanley, Lumpkins, and Pereira knew or should have known that Allwaste would rely on the Opinion Letters and disseminate them to third parties, who would also rely on their contents, and that Allwaste in fact did so; that defendants failed to conduct an adequate investigation of Philip or to inform Allwaste of problems that later led to the decline in Philip's stock price and the value of their debentures; that Lumpkins had represented to Allwaste that Morgan Stanley was qualified and experienced in investigating and advising regarding transactions like the proposed Allwaste-Philip merger and could aid Allwaste in evaluating Philip's proposal; and that Morgan Stanley had represented in the Letter Agreement that it would provide financial advice and assistance concerning the transaction, including defining objectives, formulating and implementing tactical strategy, performing valuation analysis, and structuring, planning, and negotiating the transaction.

Defendants removed the case to federal court based on diversity of citizenship. Although the

relevant parties[1] are completely diverse, Lumpkins is a Texas citizen.[2]  Therefore, under the terms of

28 U.S.C. § 1441(b),[3] defendants could not remove the case unless plaintiffs had fraudulently joined

Lumpkins as a defendant.

The district court denied plaintiffs' remand motion, concluding that Lumpkins had been

fraudulently joined.  After it decided the motion, this court decided *Collins*.  We affirmed the

dismissal under Rule 12(b)(6) of a suit by holders of Allwaste stock options against Morgan Stanley

---

[1]*See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) ("In this case, Prudential asserted federal jurisdiction on the basis of diversity jurisdiction, which, in a class action, requires complete diversity of citizenship of the named parties[.]").

[2]The district court, *see, e.g.,* R. 258, and the parties, *see, e.g.,* Appellants Br. at 1; Appellees Br. at 1, refer to Lumpkins' *residence* rather than to his *citizenship*.  It is well settled, however, that Lumpkins' *citizenship* is controlling.  *See, e.g., Realty Holding Co. v. Donaldson*, 268 U.S. 398, 399 (1925).  Moreover, we note *sua sponte* that, in defendants' notice of removal, they alleged Lumpkins' and Pereira's *residence* rather than their *citizenship*.  *See* R. 41.  "It is established that an allegation of residency does not satisfy the requirement of an allegation of citizenship." *Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir. 1984) (per curiam).  Despite this defect in the notice of removal, plaintiffs' complaint properly alleges Lumpkins' and Pereira's *citizenship*.  *See* R. 33. Accordingly, we need not address whether defendants should now be required or permitted to amend their notice of removal.  *See D.J. McDuffie v. Old Reliable Fire Ins. Co.*, 608 F.2d 145, 146-47 (5th Cir. 1979) (holding that faulty allegations of diversity of citizenship could be cured by amended petition for removal filed in district court) (citing *Firemen's Ins. Co. v. Robbins Coal Co.*, 288 F.2d 349, 350 (5th Cir. 1961) (holding that defective allegation of diversity jurisdiction in suit originally filed in federal district court could be amended in court of appeals)).

[3]28 U.S.C. § 1441(b):

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.  Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

*Id.*

and Pereira based on allegations of an inadequate investigation of Philip similar to those that plaintiffs

assert here. *See Collins*, 224 F.3d at 498. Defendants moved under Rule 12(c)[4] for judgment on the

pleadings. The district court relied in part on *Collins* as persuasive, although not binding, authority

and dismissed plaintiffs' complaint.[5]

Plaintiffs appeal, arguing that defendants failed to establish that Lumpkins was fraudulently

joined and that they did not demonstrate that they were entitled to judgment on the pleadings.[6]

II

Although we apply somewhat different standards in deciding whether Lumpkins was

fraudulently joined and whether plaintiffs have stated a claim, the jurisprudence is sufficiently similar

and the issues sufficiently interrelated that we can address them together. Before turning to the merits

of each asserted cause of action, we will set out the standards of review and the controlling law of

---

[4]Defendants styled their motion as a "motion for *summary judgment* on the pleadings" (emphasis added). R. 230. The district court accordingly referred to the pleading by the same title when it decided the motion. *Id.* at 501. It is clear from the court's order, however, that it treated defendants' motion as brought under Rule 12(c), not Rule 56, and that the district court decided the motion under the Rule 12(c) standard. *Id.* at 499-497. (We refer to the record by higher numbers before lower ones because the district clerk's office numbered the pages of the record backward.) Moreover, defendants recognize in their brief on appeal that Rule 12(c) applies. *See* Appellees Br. at 5, 42-43.

Perhaps due to the title defendants gave their motion, plaintiffs mistakenly cite Rule 56(f) to contend the district court erred by dismissing this case without permitting them to conduct discovery. *See* Appellants Br. at 56-57. Rule 56(f) has no relevance, however, when a Rule 12(c) motion is not converted to a Rule 56 motion. And, as we explain below, the district court's decision was properly based on the content of plaintiffs' complaint, the Letter Agreement, and the Opinion Letters. No discovery was necessary.

[5]Although plaintiffs' operative pleading is their state court "petition"--which is the Texas procedural term--we will refer to it, as have the parties, as their "complaint."

[6]Plaintiffs neither appeal the dismissal of their breach of contract claim nor contend that this claim defeats defendants' assertion of fraudulent joinder, and we will not discuss further this cause of action.

fraudulent joinder and judgment on the pleadings under Rule 12(c). We will also decide whether, in making its rulings, the district court properly considered documents besides plaintiffs' complaint and whether we may entertain them on appeal.

A

We review *de novo* the district court's order denying plaintiffs' motion to remand, *see Heritage Bank v. Redcom Laboratories, Inc.*, 250 F.3d 319, 323 (5th Cir. 2001), and its decision that Lumpkins was fraudulently joined, *see Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999). To decide whether a defendant has been fraudulently joined, the district court can employ a summary judgment-like procedure that allows it to pierce the pleadings and examine affidavits and deposition testimony for evidence of fraud or the possibility that the plaintiff can state a claim under state law against a nondiverse defendant. *See B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 n.9 (5th Cir. Unit A Dec. 1981). The district court recognized that it could follow this regimen, but it did not do so to the fullest extent allowed. Instead, it relied on the allegations of plaintiffs' complaint and the contents of the Letter Agreement and the Fairness Opinion.

When the district court fails to apply a summary judgment-like procedure, we normally "are limited to a review of the allegations in the complaint." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 (5th Cir. 2000). If the facts set out in plaintiffs' complaint, taken as true and drawing all inferences in the light most favorable to plaintiffs, at least raise the possibility that they could succeed in establishing a claim against the in-state defendant, the defendant's citizenship cannot be disregarded and diversity jurisdiction is absent. *See id.* at 247-48. Here, however, the district court also relied on the contents of the Letter Agreement and the Fairness Opinion. Plaintiffs do not argue that the court erred in doing so. They relied on them in support of their remand motion, *see, e.g.,* R. 135, attaching a copy

of the Letter Agreement to their motion, *id.* at 61-59.[7]  Accordingly, they have waived any error, assuming *arguendo* that the district court erred.  *See, e.g., Edmond v. Collins*, 8 F.3d 290, 292 n.5 (5th Cir. 1993) ("On appeal, we do not review issues not briefed.").  We will therefore review the district court's fraudulent joinder decision based on the allegations of the complaint and the contents of the Letter Agreement and the Fairness Opinion.

The removing party carries a heavy burden when attempting to prove fraudulent joinder.  *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 259 (5th Cir. 1995).  "The removing party must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court, or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts."  *Id.* (quoting *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983)).  "After all disputed questions of fact and all ambiguities in the controlling state law are resolved in favor of the nonremoving party, the court determines whether that party has any possibility of recovery against the party whose joinder is questioned."  *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990).  "If there is 'arguably a reasonable basis for predicting that the state law might impose liability on the facts involved,' then there is no fraudulent joinder."  *Badon v. RJR Nabisco Inc.*, 236 F.3d 282, 286 (5th Cir. 2001) (quoting *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 816 (5th Cir. 1993)).  This possibility, however, must be reasonable, not merely theoretical.  *See id.* at 286 n.4.

---

[7]*See supra* note 4 concerning why we refer to the record by higher numbers before lower ones.

B

"We review rule 12(c) dismissals *de novo*." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000)). Rule 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." "A motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir.1990) (per curiam) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367, at 509-10 (1990)). "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes*, 278 F.3d at 420 (quoting *St. Paul Mercury Ins. Co.*, 224 F.3d at 440 n.8).

"Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Id.* (citing *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir.1998)). "The [district] court may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam) (citing *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir.1990)). "In analyzing the complaint, we will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (citing *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996)). We will not, however, "accept as true conclusory allegations or unwarranted deductions of fact." *Collins*, 224

F.3d at 498 (addressing Rule 12(b)(6) standard[8]) (quoting *Tuchman v. DSC Comm. Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Jones*, 188 F.3d at 324 (citations omitted).

We have not been consistent in reciting the standard that governs the documents that a district court may properly consider in deciding a Rule 12(c) motion. In *Hughes*, for example, we said that "the district court is *confined to* the pleadings and must accept all allegations contained therein as true." *Hughes*, 278 F.3d at 420 (emphasis added) (citing *St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991)). *Hughes* follows *St. Paul Insurance Co.*, which concluded that "[a] court which considers a motion for a . . . 12(c) dismissal must look *only at* the pleadings[.]" *St. Paul Ins. Co.*, 937 F.2d at 279 (emphasis added). In *Hebert*, however, we held that the district court "look[s] to the substance of the pleadings *and any judicially noticed facts*." *Hebert*, 914 F.2d at 76 (emphasis added). In *Voest-Alpine* we stated that the district court could consider documents attached to the complaint "because these documents thereby [become] part of [the] pleadings." *See Voest-Alpine*, 142 F.3d at 891 n.4. By contrast, in *Gutierrez v. City of San Antonio*, 139 F.3d 441, 444 n.1. (5th Cir. 1998), we held that a motion had been converted to a Rule 12(c) motion *because* materials outside the pleadings had been attached to the motion. And in *Hager v. NationsBank N.A.*,

---

[8]Rule 12(b)(6) decisions appropriately guide the application of Rule 12(c) because the standards for deciding motions under both rules are the same. *See* 5A Wright & Miller, *supra*, § 1368 at 591 (Supp. 2002) ("A number of courts have held that the standard to be applied in a Rule 12(c) motion is identical to that used in a Rule 12(b)(6) motion." (footnote omitted)).

167 F.3d 245, 247 (5th Cir. 1999), we reached a similar conclusion, holding that "[t]he district court explicitly relied on NationsBank's affidavit, as well as on documents attached to Hager's complaint, in its opinion dismissing Hager's claims for failing to exhaust, thus converting the 12(b)(6) motion into a 12(c) motion."

We need not attempt to reconcile our Rule 12(c) decisions today. As noted, the district court relied on plaintiffs' complaint, the Letter Agreement, and the Fairness Opinion. Plaintiffs referred to parts of these documents in their complaint. *See, e.g.,* Compl. ¶¶ 21, 23, 29, 30. They also relied on them in their reply and objections to defendants' motion for judgment on the pleadings. *See, e.g.,* R. 454, 447. Although they did not, as in *Voest-Alpine*, physically attach them to their complaint, we can take into account the contents of the Letter Agreement and the Opinion Letters on appeal. Plaintiffs did not dispute in the district court, and do not contest on appeal, the contents of the documents. They rely on them in at least some respects to support their claims. Nor do they argue that the district court erred in basing its decision on the contents of the Letter Agreement and the Fairness Opinion. Plaintiffs have thus waived any argument that the district court erred in considering these documents in addition to the complaint. *See Edmond*, 8 F.3d at 292 n.5; *Collins*, 224 F.3d at 498-99 (Rule 12(b)(6) decision) ("In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto. Here, the court included, in its review, documents attached not to the pleadings, but to the motion to dismiss. Plaintiffs did not object in the district court to this inclusion and do not question it on appeal." (citation omitted)).

C

Plaintiffs have structured their 126-paragraph complaint by setting out in the first 68 paragraphs their allegations concerning the parties, Compl. ¶¶ 1-5, jurisdiction and venue, *id.* ¶¶ 6-7, factual allegations common to all counts, *id.* ¶¶ 8-58, and class action allegations, *id.* ¶¶ 59-68,[9] followed by allegations in eight substantive counts that adopt unspecified portions[10] of the preceding paragraphs, *id.* ¶¶ 69-121. Accordingly, in addition to the allegations of each specific count under consideration, we will review the common factual assertions to determine whether there is any possibility that plaintiffs can recover against Lumpkins and whether they have stated a valid claim for relief under any theory against defendants.

III

We consider together plaintiffs' claims for negligence, gross negligence/malice, and professional negligence.

A

"Under Texas law, negligence consists of four essential elements: (1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) an actual injury to the plaintiff; and (4) a showing that the breach was the proximate cause of the injury." *Gutierrez v. Excel Corp.*, 106 F.3d 683, 687 (5th Cir. 1997) (citing *Skipper v. United States*, 1 F.3d 349, 352 (5th Cir. 1993)). Gross negligence has two requirements: "(1) viewed objectively from the standpoint of the actor, the act

---

[9]Plaintiffs also assert counts for punitive damages, *id.* ¶¶ 122-123, and attorney's fees, *id.* ¶¶ 124-125.

[10]The adopted portions are unspecified because in each count plaintiffs incorporate "Paragraphs 1 through ____ above," but they neglect to fill in the blank. *See, e.g.,* ¶¶ 69, 74, 80, 89, 96, 104, 110, and 115.

- 12 -

or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed with conscious indifference to the rights, safety, or welfare of others." *Henderson v. Norfolk Southern Corp.*, 55 F.3d 1066, 1070 (5th Cir. 1995) (quoting *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex. 1994)). To establish liability for professional negligence, the plaintiff must show the existence of a duty, a breach of that duty, and damages arising from the breach. *See Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995) (addressing legal malpractice). "The threshold inquiry in a negligence case is duty." *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990) (citing *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987)).

The district court held that Lumpkins had been fraudulently joined because plaintiffs had not pleaded allegations that showed that he owed an individual duty to the debenture holders independent of the one that Morgan Stanley allegedly assumed when it entered into the Letter Agreement. Plaintiffs contend the district court erred because, under Texas law, a corporate officer can be held liable individually for a corporation's tortious conduct if he knowingly participates in the conduct or has actual or constructive knowledge of it. They maintain that the complaint alleges that Lumpkins personally participated in the tortious conduct, and that it is reasonable to infer that he would have benefited monetarily from consummation of the merger and therefore had reason to be personally involved in Morgan Stanley's negligent due diligence. Plaintiffs contend there is at least a possibility that plaintiffs have stated a claim against Lumpkins.[11]

---

[11]Plaintiffs also maintain that they have learned through discovery in another lawsuit facts that undercut the district court's conclusions concerning Lumpkins' lack of individual involvement. Although plaintiffs have included in their record excerpt s the materials they cite in support of this

The district court correctly concluded that plaintiffs have no possibility of recovering against Lumpkins based on their negligence causes of action. In Texas, individual liability for corporate negligence "arises only when [an] officer or agent owes an independent duty of reasonable care to the injured party apart from the employer's duty." *See Leitch v. Hornby*, 935 S.W.2d 114, 117 (Tex. 1996). Plaintiffs do not allege that Lumpkins participated in any specific conduct other than soliciting, on Morgan Stanley's behalf, an engagement to investigate and advise Allwaste regarding the Philip offer; representing that Morgan Stanley was qualified and experienced in investigating and advising in such transactions and would be able to aid Allwaste in evaluating the merits, advisability, and fairness of the proposal; and signing the Letter Agreement as Managing Director on behalf of Morgan Stanley, under which it agreed to provide Allwaste a wide array of financial advice and assistance concerning the proposed Philip transaction. *See* Compl. ¶¶ 20-21. Plaintiffs do not attempt to predicate negligence liability on this conduct, and they have not pleaded facts that, viewed favorably, show that Lumpkins owed any relevant independent duty to them.

Plaintiffs aver that defendants are liable for negligence because they breached a duty to conduct a thorough due diligence investigation of Philip's sale offer; to determine Philip's financial condition; to investigate the background, integrity, experience, and qualifications of Philip's officers and directors; to provide financial advice regarding the proposed Allwaste-Philip merger; and to assess the potential impact of the proposed sale on, among others, the debenture holders. Compl.

---

assertion, they have not identified where these documents are included in the record on appeal, *see* Appellants Br. at 29-30 & 30 n. 10, the excerpt pages do not contain the numbering normally reflected on documents that *are* part of the record, and we have not located them in our review of the record. We therefore decline to consider them. *See In re GHR Energy Corp.*, 791 F.2d 1200, 1201-02 (5th Cir. 1986) (per curiam) ("[T]his court is barred from considering filings outside the record on appeal, and attachments to briefs do not suffice.") (citations omitted)).

¶ 70. They allege that this was gross negligence and/or malice. *Id.* ¶ 78. Plaintiffs assert that defendants engaged in professional negligence by failing to conform their conduct to the generally recognized and accepted practices and standards of their profession by not conducting a thorough and accurate investigation of Philip's sale offer; by not thoroughly and accurately assessing Philip's financial condition; by disseminating misleading information regarding Philip and its financial condition; and by not thoroughly and accurately assessing the background, integrity, experience, and qualifications of Philip's officers and directors. *Id.* ¶ 112. These are allegations that relate to acts or omissions after contract solicitation and formation. The pleading is structured so that Lumpkins simply drops out of the picture after he obtains Allwaste's business and signs the Letter Agreement on Morgan Stanley's behalf.[12]

Because there is no possibility that plaintiffs can recover against Lumpkins for negligence, gross negligence/malice, or professional negligence, the district court did not err in holding that he had been fraudulently joined in these claims.

B

The district court dismissed plaintiffs' negligence claims under Rule 12(c) on the ground that they arose solely from Morgan Stanley's negligent performance of the Letter Agreement and that Morgan Stanley had no independent legal duty apart from its contractual obligations to Allwaste. The court concluded that plaintiffs could not recover for professional malpractice because such a claim could not be brought absent a professional relationship based on an agreement to provide professional services, and Morgan Stanley did not agree to provide professional services to the debenture holders.

---

[12]After ¶ 21, Lumpkins reappears only to the extent he is included among the collective "defendants" referred to in a substantive claim.

- 15 -

Plaintiffs concede that the negligent failure to perform a contractual duty normally does not support a separate tort cause of action. They maintain, however, that a tort claim may also arise where the same conduct would lead to liability independent of the contract. Plaintiffs rely on Texas cases that impose tort liability on parties who voluntarily undertake actions for the benefit of other parties, but fail to exercise reasonable care, resulting in injury to their persons or property. They argue that, viewed favorably, the complaint shows that defendants voluntarily undertook a due diligence investigation of Philip for the benefit of Allwaste's stockholders and other investors and thereby assumed a duty to exercise reasonable care in doing so. Plaintiffs also maintain that defendants owed them a duty under general negligence principles, and that Texas would recognize that defendants had a duty to conduct an adequate due diligence investigation.

We reject plaintiffs' arguments. Although plaintiffs contend in their brief that they have pleaded that "defendants voluntarily undertook their 'due diligence' investigation of Philip for the benefit of Allwaste's stockholders and other investors," Appellants Br. at 50, they conspicuously fail to cite any place in their complaint that advances such an allegation concerning the debenture holders. *See id.*; Appellants Rep. Br. at 17-18. The closest they come to asserting that defendants acted on behalf of someone other than Allwaste, its Board of Directors, officers, and shareholders is their allegation that defendants knew or should have known that Allwaste would and did disseminate the Fairness Opinion and related information concerning the due diligence investigation to third parties, such as the debenture holders. *See* Compl. ¶¶ 31, 32, 54, 55. Plaintiffs do not aver, however, that defendants voluntarily undertook a due diligence investigation for the benefit of the debenture holders. Instead, they make the conclusory assertion that defendants owed the debenture holders such a duty. *See id.* ¶¶ 70, 75. Absent from their pleading is any allegation of facts that shows how

this duty arose--i.e., that defendants voluntarily undertook to act on behalf of the debenture holders.[13]

In a complaint that otherwise relies on documents that explicitly provide that Morgan Stanley rendered services only to the client who hired it, this omission is not a mere technicality. The Letter Agreement states that Morgan Stanley would act "with duties solely to Allwaste." Except for Securities and Exchange Commission ("SEC") filings by Allwaste in connection with the merger, the Letter Agreement and the Opinion Letters also restricted Allwaste's disclosure and use of the opinion without Morgan Stanley's prior written consent. Given these limitations, it was obligatory for plaintiffs to allege facts that, viewed favorably to them, would permit the conclusion that defendants acted for the benefit of the debenture holders.

Plaintiffs' other basis for alleging a duty is also insufficient. They contend that Texas would recognize under general negligence principles that defendants owed them a duty of reasonable care. Their argument in the district court in support of their negligence claims is set out at pages 19 through 21 of their reply and objections to defendants' Rule 12(c) motion. R. 440-438. They did not rely below on the contention they now advance, and we hold that the argument is waived. *See Vogel v. Veneman,* 276 F.3d 729, 733 (5th Cir 2002) ("We find that the [appellants] are precluded from raising this argument because they failed to make it before the district court. Except in cases of 'extraordinary circumstances,' we do not consider issues raised for the first time on appeal." (citing *N. Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910, 916 (5th Cir.1996)).[14]

---

[13]Even if we assume that plaintiffs assert in support of their professional negligence cause of action that defendants' duty arose under generally recognized and accepted professional practices and standards, *see id.* ¶ 111, they do not now rely on this basis to establish a duty running from defendants to the debenture holders. They mention professional standards only in asserting that Texas would recognize a duty under general negligence principles. *See* Appellants Br. at 51.

[14]Nor did plaintiffs advance this argument in support of their motion to remand. *See* R. 67-66.

Even if plaintiffs had preserved this argument below, we would reject it either as lacking merit or on the basis that they are essentially asking a federal court in an *Erie* context[15] to extend Texas law. Citing the factors set out in *Greater Houston Transportation Co.*, plaintiffs argue that Texas would consider the enormous risk of monetary loss to plaintiffs, the foreseeability and likelihood that they would be injured by a feeble due diligence investigation, and the lack of social utility to defendants' reckless conduct and hold that defendants owed a duty to plaintiffs to use reasonable care. *Greater Houston Transportation Co.* does not support the conclusion that Texas would recognize a duty in a case like the present one. In that case, the Texas Supreme Court declined to recognize a duty of a cab company to warn its drivers not to carry guns. *Greater Houston Transp. Co.*, 801 S.W.2d at 527. Plaintiffs are necessarily relying on the factors discussed in that decision to argue that Texas would recognize a common law duty under the facts that they have pleaded in this case. *See* Appellants Rep. Br. at 18 ("Given the degree of risk, the foreseeability and likelihood of harm, and the lack of social utility to allowing investment bankers to shirk their responsibilities, defendants should be held responsible for failing to use reasonable care."). They do not point to a court decision that indicates that, in a contractual setting, Texas would impose a duty on someone who did not undertake to act voluntarily for another. Federal courts in *Erie* cases do not "create or modify" state law. *Associated Int'l Ins. Co. v. Blythe*, 286 F.3d 780, 783 (5th Cir. 2002) (quoting *United Parcel Serv., Inc. v. Weben Indus., Inc.*, 794 F.2d 1005 1008 (5th Cir. 1986)). Because plaintiffs have failed to demonstrate that defendants owed them a duty to act with reasonable care, the district court did not err in holding that they cannot recover on their claims for negligence, gross

---

[15]*See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). *Erie* principles apply because removal jurisdiction is based on diversity of citizenship.

negligence/malice, or professional negligence.

IV

We turn next to plaintiffs' cause of action for negligent misrepresentation, considering together whether Lumpkins was fraudulently joined and whether defendants were entitled to judgment on the pleadings.

A

To recover under Texas law for negligent misrepresentation, plaintiffs must prove that (1) the defendant made a representation in the course of his business, or in a transaction in which he had a pecuniary interest, (2) the defendant supplied false information for the guidance of others in their business, (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information, and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *First Nat'l Bank of Durant v. Trans Terra Corp. Int'l*, 142 F.3d 802, 809 (5th Cir. 1998) (citing *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).

The district court held on several grounds that plaintiffs could not recover from Lumpkins for negligent misrepresentation. "When the judgment of the district court is correct, it may be affirmed on appeal for reasons other than those given or relied on below." *Terrell v. Univ. of Tex. Sys. Police*, 792 F.2d 1360, 1362 n.3 (5th Cir. 1986). Accordingly, if the district court correctly granted judgment on the pleadings dismissing plaintiffs' claim for negligent misrepresentation against all defendants, we can affirm its conclusion that Lumpkins was fraudulently joined.

The district court granted defendants' motion for judgment on the pleadings on the ground that the debenture holders did not fall within the limited group of persons for whose benefit and guidance the information was provided. The court held *inter alia* that this information was intended

for the Allwaste Board, and it concluded that, even if Morgan Stanley had known that the shareholders of Allwaste would receive the information and use it to decide how to vote on the proposed merger, it did not appear that the opinion was intended to benefit the debenture holders or to guide their actions, because the Fairness Opinion did not relate to the debenture holders and did not purport to be an independent audit. Plaintiffs maintain that defendants had reason to expect that the debenture holders would rely on defendants' representations.

B

The "Restatement (Second) of Torts § 552 requires that a plaintiff claiming negligent misrepresentation be the person, or a member of a 'limited group' of persons, for whose benefit and guidance the defendant either intends to supply the information or knows that the recipient intends to supply it." *Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.*, 81 F.3d 606, 612 (5th Cir. 1996) (Texas law). Plaintiffs assert that Lumpkins "represented to Allwaste that Morgan Stanley was qualified and experienced in investigating and advising regarding such transactions, and would be able to aid Allwaste in evaluating the merits, advisability, and fairness of the Philip's proposal." Compl. ¶ 20.[16] They allege that Morgan Stanley, through Pereira, reported to Allwaste that Morgan Stanley had fully performed its due diligence, that its thorough investigation revealed no concerns about Philip

_____

[16]When the negligent misrepresentation paragraphs of the complaint are considered together with the predicate allegations, it is clear that plaintiffs rely in their complaint only on this representation. Plaintiffs allege in ¶ 81 that, "[a]s set forth above, defendants made false and material oral and written representations to plaintiffs regarding their 'due diligence' investigation; Philip and its financial condition; the merits, advisability, and fairness of Philip's sale offer; and the integrity, experience, and qualifications of Philip's officers and directors." Compl. ¶ 81. Of these alleged representations, only those pertaining to defendants' due diligence investigation could conceivably have been made during the time period when Lumpkins was allegedly involved in obtaining Allwaste's business and signing the Letter Agreement. The only misrepresentation attributable to Lumpkins is found in ¶ 20.

that were sufficient to threaten or call into question the proposed sale or merger, and that Philip's upper-level management was "clean." *Id.* ¶¶ 25-28. Plaintiffs posit that Morgan Stanley issued the Fairness Opinion, in which it opined that the proposed Allwaste-Philip merger was fair. *Id.* ¶¶ 29-30. They aver that all defendants knew that Allwaste would disseminate the Letter Opinions and related information concerning their due diligence investigation to third parties, such as the Allwaste shareholders and debenture holders, *id.* ¶ 31;[17] that Allwaste did, in fact, distribute such information, *id.* ¶ 32; that defendants made false and material oral and written misrepresentations to plaintiffs regarding their due diligence investigation, Philip and its financial condition, the merits, advisability, and fairness of the sale offer, and the integrity, experience, and qualifications of Philip's officers and directors, *id.* ¶ 81; and that defendants supplied false information for unspecified "others" in the course of their business, *id.* ¶ 83.[18]

The district court did not err in dismissing plaintiffs' negligent misrepresentation cause of action, because plaintiffs failed to plead sufficient facts to permit the conclusion that they were the persons, or one of a limited group of persons, for whose benefit and guidance defendants intended to supply the information or knew that Allwaste intended to supply it. The debenture holders did not have authority to approve or disapprove the merger. The Letter Agreement stated that Morgan Stanley owed duties solely to Allwaste, and the Letter Agreement and Opinion Letters were addressed to the Board and explicitly restricted the universe of those who could rely on the Fairness

---

[17]They also assert that defendants should have known that such distribution would occur, *see* Compl. ¶ 31, but this allegation is inapposite under the controlling Restatement standard.

[18]Plaintiffs also allege in ¶¶ 54 and 55 that defendants knew or should have known that unspecified information they were communicating "directly or indirectly to the public, the Debenture holders, and other interested parties" would be relied on or would impact the market. *Id.* ¶¶ 54, 55.

Opinion. "[B]oth the Agreement and the fairness opinion specified that the efforts were undertaken at the behest of and for the benefit of the Board alone. The fairness opinion, meanwhile, expressly negated not only enforcement by but reception to third parties." *Collins*, 224 F.3d at 499. Confronted with documents that confined Morgan St anley's role and restricted distribution of its opinion, plaintiffs were required to do more than posit conclusory assertions concerning what defendants intended and about their knowledge concerning Allwaste's intent to supply information to the debenture holders. *Cf. id.* at 500 (holding that pleadings that alleged only "the most conclusional claim that an oral contract existed" did not state claim). In the context of this case, they were obligated to allege facts that, viewed favorably to them, permitted the finding that defendants intended to provide information to the debenture holders, or knew that Allwaste intended to supply the information to debenture holders, despite the express limitations provided in the Letter Agreement and Opinion Letters. That is, they were required to plead facts sufficient to permit the reasonable inference that defendants intended to disseminate information to the debenture holders despite the terms of Morgan Stanley's contractual arrangement with Allwaste, or the inference that defendants knew that Allwaste would disregard the Letter Agreement's explicit restrictions on disclosure of the Fairness Opinion.

Plaintiffs have not pleaded their negligent misrepresentation claim as required, and the district court did not err in dismissing it or in concluding that Lumpkins had been fraudulently joined.

V

We now consider plaintiffs' cause of action for breach of fiduciary duty.

A

The district court held that Lumpkins could not be held liable for breach of fiduciary duty because he had no confidential relationship with the debenture holders that could give rise to an informal fiduciary relationship under Texas law. A fiduciary duty is not lightly created. *Kline v. O'Quinn*, 874 S.W.2d 776, 786 (Tex. App.--Houston [14th Dist.] 1994, writ denied). "A party asserting breach of a fiduciary duty must establish the existence of a confidential or similar relationship giving rise to a fiduciary duty." *FCLT Loans, L.P. v. Estate of Bracher*, ___ S.W.3d ___, 2002 WL 31319725, at *6 (Tex. App.--Houston [14th Dist.] 2002, no pet. h.) (on rehearing).

Plaintiffs argue that Texas law creates a fiduciary relationship when a party is under a duty to act for or give advice for the benefit of another on a matter within the scope of the relation; that a formal relationship is unnecessary; that principles of equity may play a role in determining the existence of a relationship; that the existence of a relationship is usually a question of fact; and that they adequately allege in ¶ 90 of their complaint the basis for such a claim against Lumpkins. Plaintiffs also cite the district court's suggestion in a footnote in its memorandum and order that, in certain circumstances (which the court held need not be considered because of the limited role Lumpkins played in the merger), Lumpkins could be jointly liable for breach of fiduciary duty if he knowingly participated in such a breach committed by Morgan Stanley or the Allwaste Board of Directors, assuming they were fiduciaries of the debenture holders.[19]

---

[19]In their reply brief, plaintiffs rely solely on this last premise to establish a breach of fiduciary duty claim against Lumpkins. *See* Appellants Rep. Br. at 29.

The district court did not err in holding that there was no possibility that plaintiffs could recover against Lumpkins for breach of fiduciary duty. In ¶ 90 of their complaint, which is the part they cite on appeal as adequately asserting their claim against Lumpkins, plaintiffs allege:

> Defendants owed plaintiffs fiduciary duties because of plaintiffs' status as Debenture holders. They owed fiduciary duties because they had or should have had superior knowledge regarding Philip and the merits, advisability, and fairness of the proposed sale, and the background, integrity, experience, and qualifications of Philip's officers and directors, but they misled plaintiffs, through inaccurate statements or omissions of material facts, regarding Philip and the merits, advisability, and fairness of the proposed sale. Moreover, defendants owed plaintiffs a fiduciary duty to act for or give advice for the benefit of plaintiffs upon matters within the scope of their relation.

Compl. ¶ 90. The allegations of this paragraph, when viewed as part of the entire complaint, are inadequate.

The specific predicate allegations of the complaint do not suggest that Lumpkins played a part in this transaction after he obtained Allwaste's business and signed the Letter Agreement on Morgan Stanley's behalf. *See supra* § III(A). The conclusory assertions in ¶ 90 about the duty that defendants supposedly owed refers to knowledge about matters and conduct that could only have arisen thereafter. The district court correctly concluded that plaintiffs had failed to allege a relationship between Lumpkins and the debenture holders that could give rise to a fiduciary duty.

Plaintiffs also seize upon the possibility, which the district court raised *sua sponte* and then rejected in a footnote, that Lumpkins could be jointly liable with Morgan Stanley or the Allwaste Board if he knowingly participated in their breach of a duty to a fiduciary. The district court correctly held that plaintiffs did not plead that Lumpkins participated in the investigation or preparation of the Opinion Letters and that, as framed in the complaint, he played a limited role in the merger and could

not have participated in any alleged breach of fiduciary duty.  The court therefore did not err in holding that Lumpkins had been fraudulently joined in plaintiffs' claim for breach of fiduciary duty.

B

The dist rict court also dismissed this cause of action against all defendants.  Plaintiffs' argument on appeal consists of three sentences.  *See* Appellants Br. at 52.  They contend the district court erred in dismissing their claim based on their unilateral and unreasonable reliance on the Fairness Opinion; that the court failed to adhere to the proper standard when analyzing the facts concerning the reliance issues; and that, because the determination of a fiduciary relationship is based on equitable principles and is primarily fact-based, plaintiffs should have been permitted to take discovery.  *Id.*  We will not consider an argument that has been inadequately briefed.  *Rutherford v. Harris County, Tex.*, 197 F.3d 173, 193 (5th Cir. 1999) (holding that "[q]uestions posed for appellate review but inadequately briefed are considered abandoned." (quoting *Dardar v. Lafourche Realty Co.*, 985 F.2d 824, 831 (5th Cir.1993)).  Because plaintiffs' arguments fail to comply with the minimum standards necessary to permit review, we affirm the dismissal of their breach of fiduciary duty claim under Rule 12(c).

VI

Plaintiffs also sue defendants for fraud.

A

To maintain a fraud cause of action against Lumpkins under Texas law, plaintiffs must establish that he (1) made a material representation, (2) that was false when made, (3) he knew the representation was false, or made it recklessly without knowledge of its truth and as a positive assertion, (4) he made the representation with the intent that plaintiffs should act upon it, and (5)

plaintiffs acted in reliance upon it and suffered injury as a result. *Beijing Metals & Minerals Imp./Exp. Corp. v. Am. Bus. Ctr. Inc.*, 993 F.2d 1178, 1185 (5th Cir. 1993) (Texas law). The district court held *inter alia* that plaintiffs could not recover against Lumpkins because plaintiffs failed to show that he intended that they rely on his statements regarding Morgan Stanley's experience and abilities. Plaintiffs maintain that they have made a sufficient showing that they justifiably relied on Lumpkins' representations regarding Morgan Stanley's qualifications and intent to perform the due diligence investigation. They also contend they have alleged that Lumpkins made representations that he knew would be communicated to the debenture holders and others, thereby satisfying the requirement of *Ernst & Young L.L.P. v. Pacific Mutual Life Insurance Co.*, 51 S.W.3d 573 (Tex. 2001), that a person can be liable for a fraudulent misrepresentation made to one whom he has reason to expect to act or to refrain from acting in reliance upon the misrepresentation. *See id.* at 580.

We conclude that the district court did not err in holding that Lumpkins had been fraudulently joined in plaintiffs' fraud claim. The only misrepresentation specifically attributable to Lumpkins is found in ¶ 20 of the complaint. There plaintiffs allege that "Lumpkins *represented to Allwaste* that Morgan Stanley was qualified and experienced in investigating and advising regarding such transactions, and would be able to aid Allwaste in evaluating the merits, advisability, and fairness of the Philip's proposal." Compl. ¶ 20 (emphasis added). Plaintiffs' contention that they reasonably relied on Lumpkins' representations does not address whether he intended that the debenture holders rely or had reason to expect that they would.

Their assertion that Lumpkins made misrepresentations with knowledge that they would be communicated to the debenture holders is not found in the complaint. Plaintiffs support this argument by citing ¶¶ 20, 21, 54, and 55 of their pleading. *See* Appellants Br. at 32. As we have noted, ¶ 20

addresses what Lumpkins represented *to Allwaste*. Paragraph 21 concerns Morgan Stanley's

obligations under the Letter Agreement.[20] Paragraphs 54 and 55[21] simply aver in conclusory terms

---

[20]Paragraph 21 asserts:

> Morgan Stanley and Allwaste entered into a letter agreement dated February 12, 1997 regarding Morgan Stanley's services with respect to Philip's proposal. David Lumpkins executed the letter agreement as Managing Director on behalf of Morgan Stanley. Pursuant to that letter agreement, Morgan Stanley was engaged to provide a wide-ranging array of "financial advice and assistance in connection with this transaction [involving Philip and Allwaste], including advice and assistance with respect to defining objectives, formulating and implementing a tactical strategy, performing valuation analysis, and structuring, planning and negotiating the transaction." Morgan Stanley also agreed that "[u]pon your request, and at no additional expense, we will render a financial opinion letter in accordance with our customary practice with respect to the consideration to be received in the transaction."

(brackets in original).

[21]Paragraph 54 states:

> Defendants knew, or should have known, that the information they were communicating directly or indirectly to the public, the Debenture holders, and other interested parties would be relied upon by the public, the Debenture holders, and other interested parties in making decisions and determining how to act with respect to their interest in Allwaste, including, but not limited to, whether to redeem or convert the Debentures and, if so, when such action should be taken.

Paragraph 55 alleges:

> Defendants knew, or should have known, that the information they were communicating directly or indirectly to the public, the Debenture holders, and other interested parties would impact the market, and that the impact on the market would be considered by the public, the Debenture holders, and other interested parties in making decisions and determining how to act with respect to their interest in Allwaste, including, but not limited to, whether to redeem or convert the Debentures and, if so, when such action should be taken.

- 27 -

that defendants knew or should have known that unspecified "information that they were communicating directly or indirectly to the public, the Debenture holders, and other interested parties" would be relied on or would impact the market. *Id.* ¶¶ 54, 55. These paragraphs do not specifically allege that Lumpkins intended or had reason to expect that his representations to Allwaste would influence the debenture holders. They in fact make no explicit reference to Lumpkins or to Allwaste. Even construing the complaint liberally, as we must, to read such an allegation into ¶¶ 54 and 55, it would be necessary to infer that nondescript "information" that defendants communicated included Lumpkins' pre-engagement representations to Allwaste about Morgan Stanley's qualifications and experience. And we would also be required to deduce that the "indirect" communications to the debenture holders encompassed Lumpkins' statements to Allwaste. These inferences and deductions are unwarranted. We therefore reject plaintiffs' reliance on conclusory assertions to maintain that Lumpkins committed fraud by making statements to Allwaste, in the context of soliciting its business, with the intent or expectation of inducing plaintiffs to act or to refrain from acting with respect to their debentures.

The district court did not err in holding that plaintiffs had no possibility of recovering against Lumpkins for fraud.

B

The district court held *inter alia* that defendants were entitled to judgment dismissing plaintiffs' fraud claim because, even assuming that Morgan Stanley expected the Fairness Opinion to reach plaintiffs, it did not appear that defendants could have expected that plaintiffs would act upon the opinion. Plaintiffs contend on several grounds that the district court erred. They maintain, in relevant part, that they satisfied their obligation to plead that defendants had reason to expect that

- 28 -

plaintiffs would rely on the Fairness Opinion.

The district court did not err. Among the elements of fraud is the requirement that the fraudfeasor make a representation with the intent that the plaintiff act upon it. *See Beijing Metals*, 993 F.2d at 1185. Texas does not require that there be privity between the alleged target of the fraud and the fraudfeasor. A defendant can be held liable for fraud when he makes a misrepresentation that he intends to reach a third person and induce reliance. *Ernst & Young*, 51 S.W.3d at 578 ("Thus, we have held that a misrepresentation made through an intermediary is actionable if it is intended to influence a third person's conduct."). For liability to arise on this basis, however, "the claimant's reliance must be 'especially likely' and justifiable, and the transaction sued upon must be the type the defendant contemplated." *Id.* at 580. The "standard requires more than mere foreseeability." *Id.* It is therefore insufficient for a plaintiff to allege "what is commonly 'known' or 'expected,'" because "even an obvious risk that a third person will rely on a representation is not enough to impose liability." *Id.* at 581.

We hold that plaintiffs have not stated a claim for fraud. Plaintiffs allege in ¶¶ 29 and 30 that Morgan Stanley issued two Letter Opinions in which it opined that the proposed merger was fair. They address in one paragraph of their fraud claim the issue of defendants' intent to induce plaintiffs' reliance. Plaintiffs advance in ¶ 99 the conclusory assertion that "Defendants knew or should have known that plaintiffs were relying on defendants' false representations and omissions." Compl. ¶ 99.[22] The predicate factual allegations of the complaint that appear to relate to this assertion are ¶¶

---

[22]Plaintiffs allege in ¶ 100 that they "did, in fact, rely upon such information both before and after the proposed merger occurred in making decisions and determining how to act with respect to their interest in Allwaste, including, but not limited to, whether to redeem or convert the Debentures and, if so, when such action should be taken."

54 and 55, which we have addressed above concerning the fraud claim against Lumpkins. *See supra* note 21.[23] Even if we read these paragraphs more leniently than we did when considering the fraud claim against Lumpkins, and hold that they can be construed to include communication of the Fairness Opinion to the debenture holders, the allegations do not adequately aver that plaintiffs' reliance was especially likely and justifiable. In each paragraph, plaintiffs assert that defendants knew, or should have known, that the information they were communicating directly or indirectly to the debenture holders would be relied on in making decisions and determining how to act. These allegations at most assert what was foreseeable to defendants, not that reliance by the debenture holders was especially likely and justifiable. Assertions of this type are inadequate, as illustrated by the Texas Supreme Court's decision last year in *Ernst & Young.*

*Ernst & Young* decided whether an accounting firm could be held liable to a plaintiff for making fraudulent misrepresentations in an audit report that the plaintiff had relied on in deciding to purchase a corporation's notes. *Ernst & Young*, 51 S.W.3d at 574-75. Pacific Mutual Life Insurance Company ("Pacific") purchased notes of InterFirst Corporation ("InterFirst") after InterFirst merged with RepublicBank Corporation ("RepublicBank"). Pacific alleged that, in acquiring the notes, it had relied on an audit report concerning RepublicBank's financial statements prepared by Ernst & Young's predecessor ("Ernst & Young"). Ernst & Young audited RepublicBank's financial statements and gave an unqualified opinion that the statements fairly presented the bank's financial

---

[23]Plaintiffs allege in ¶ 31 that "Defendants knew or should have known that *Allwaste would rely* on and disseminate these 'fairness opinions' and related information concerning their 'due diligence' investigation they undertook regarding Philip, its offer, and its management to third parties, such as the Allwaste shareholders and the Debenture holders." Compl. ¶ 31 (emphasis added). They do not allege, however, that defendants expected that *the debenture holders would rely* on the information.

position. With Ernst & Young's consent, RepublicBank incorporated the audit report and the audited financial statement in several documents, including publicly-available reports to shareholders and SEC filings (proxies, prospectuses, and registration statements). *Id.* at 575-76. After reviewing public information relating to the InterFirst-RepublicBank merger, including the merger prospectuses, Pacific decided that the InterFirst notes were a good investment because they would be backed by the merged bank. *Id.* at 576. Shortly after Pacific made the purchase, the merged entity, First RepublicBank Corporation ("First RepublicBank"), filed for bankruptcy. Pacific sued Ernst & Young, among others, alleging that the audit opinion contained misrepresentations and that the financial statements did not accurately reflect RepublicBank's financial condition. It also asserted that Ernst & Young had violated cert ain accounting standards. Ernst & Young moved for summary judgment, in part on the ground that it did not specifically intend for Pacific to rely on representations made in the audit report when making its decision to buy the InterFirst notes. *Id.*

The Texas Supreme Court held that Pacific could not recover against Ernst & Young for fraud because Pacific had not met the reason-to-expect standard for determining whether Ernst & Young had intended to induce Pacific's reliance on the audit report. *Id*. at 580. Pacific introduced summary judgment evidence that Ernst & Young knew that investors in all securities backed by First RepublicBank would rely upon the information in the audit report; that it was known and expected by public accounting firms like Ernst & Young that documents like the prospectuses and proxy materials were widely disseminated throughout the investment community and that investors relied upon information from these materials when evaluating investments in securities the subject entity backs; that investors like Pacific commonly relied on representations made in SEC-filed documents in evaluating securities backed by an entity; and that Ernst & Young's contention that it did not intend

Pacific to rely on the audit report in buying the InterFirst notes was contrary to commonly accepted and firmly established practices in the investment community. *Id.* at 580-81. The Texas Supreme Court reversed the court of appeals' conclusion that this evidence was sufficient to raise a fact issue whether Ernst & Young had reason to expect Pacific's reliance on the audit report in deciding to buy the InterFirst notes. *Id.* at 581. The court reasoned that Pacific's affidavits spoke in terms of what was commonly "known" or "expected" in the investment community, "[b]ut even an obvious risk that a third person will rely on a representation is not enough to impose liability." *Id.* Although "[g]eneral industry practice or knowledge may establish a basis for foreseeability to show negligence, . . . it is not probative of fraudulent intent." *Id.* Instead, "[t]o prove that an alleged fraudfeasor had reason to expect reliance, '[t]he maker of the misrepresentation *must have information* that would lead a reasonable man to conclude that there is *an especial likelihood* that it will reach those persons and will influence their conduct. There must be something in the situation *known to the maker* that would lead a reasonable man to govern his conduct on the assumption that this will occur. *If he has the information,* the maker is subject to liability under the rule stated here." *Id.* (quoting Restatement (Second) of Torts § 531 cmt. d (1977) (emphasis in original)). The court held that Pacific's evidence of the generalized industry practice or understanding was insufficient to show that Ernst & Young possessed information of an especial likelihood that investors like Pacific would rely on Ernst & Young's statements in the merger-related prospectuses in purchasing securities InterFirst had issued years earlier. *Id.*

If anything, the allegations of the complaint in this case are weaker than the evidence found inadequate in *Ernst & Young*. The Letter Agreement and the Fairness Opinion cabined the persons to whom the Fairness Opinion was directed--the Allwaste Board and shareholders. The Letter

Agreement explicitly provided that "[a]ny advice or opinions provided by Morgan Stanley may not be disclosed or referred to publicly or to any third party except in accordance with our prior written consent." Like the Letter Agreement, the Opinion Letters contained a restriction that they were "for the information of the Board of Directors of the Company only and may not be used for any other purpose without [Morgan Stanley's] prior written consent, except that this opinion may be included in its entirety in any filing made by Allwaste with the Securities and Exchange Commission in connection with the Merger." Plaintiffs were therefore obligated to do more than posit conclusory assertions in an attempt to broaden the class of intended recipients. Faced with these limitations, plaintiffs were required to plead facts that, viewed favorably to them, permitted the conclusion that defendants knew the Fairness Opinion was not in fact only for the information of Allwaste's Board, and that defendants were aware of facts that would lead a reasonable person to conclude that there was an especial likelihood that the Fairness Opinion would reach the debenture holders and influence their conduct. Under *Ernst & Young*, the allegations had to amount to more than mere assertions that defendants knew or should have known that plaintiffs would rely on the Fairness Opinion in deciding whether to redeem their debentures.[24]

---

[24]Plaintiffs cite in their brief evidence from another lawsuit in which Allwaste's Board Chairman testified that there was a "good possibility" that the Board's determination that the merger was in the best interests of the company "would get to the debenture holders" and that it was "probably correct" that there was "a special likelihood that this information would get to the debenture holders." *See* Appellants Br. at 12 n. 5 & 41 n.12. They maintain that pages from the witness' deposition in that case were attached to their reply and objections to defendants' motion for judgment on the pleadings. *Id.* at 12 n. 5. Even if we assume that this evidence is sufficient to cure the defects we have identified, the district court, in ruling on the motion for judgment on the pleadings, declined to consider any document other than plaintiffs' complaint, the Letter Agreement, and the Fairness Opinion. *See* R. 498. Plaintiffs have not asserted before us that the district court erred in this respect. Accordingly, they may not rely on the contents of these documents to shore up their defective complaint.

Plaintiffs also rely on § 536 of the Restatement (Second) of Torts (1977) to establish that defendants can be liable for fraud. "Under this section, one who complies with a statutory filing requirement is presumed to have reason to expect that the information will reach and influence the class of persons the statute is designed to protect." *Ernst & Young*, 51 S.W.3d at 581 (citing § 536 cmt. c). Even assuming that § 536 can carry the load that plaintiffs assign to it, *see id.* at 582 ("Because section 536 effectively alleviates a claimant's burden to show intent to induce reliance in fraud actions, it should be applied narrowly if at all."), this argument is a makeweight that is found in plaintiffs' briefs on appeal. They have not included in their complaint the factual allegations that would support such a theory, and we decline to consider it.

According to the Letter Agreement, Morgan Stanley authorized Allwaste to disclose the Opinion Letters to the SEC in any filing made by Allwaste with the SEC. Plaintiffs do not allege that Morgan Stanley was itself complying with a statutory filing requirement. Under Rule 12(c), we assess whether plaintiffs would be entitled to relief under any set of facts or any possible theory that they could prove "consistent with the allegations in the complaint." *Jones*, 188 F.3d at 324. We decline to allow plaintiffs to rely on the contents of their appellate brief as a surrogate for allegations that are missing from their complaint.

To the extent that plaintiffs rely on defendants' knowledge that the Fairness Opinion would be publicly available once filed with the SEC, their argument fares no better. *Ernst & Young* specifically held inadequate to meet the required standard evidence that investors commonly relied on representations made in SEC filings. The allegations of reliance in plaintiffs' complaint are limited to ¶¶ 99, 54, and 55, which aver nothing that would permit the reasonable inference that there was an especial likelihood that debenture holders would rely on Allwaste's SEC filings.

- 34 -

Accordingly, we hold that the district court did not err in granting judgment on the pleadings as to plaintiffs' fraud cause of action.

## VII

We turn finally to plaintiffs' DTPA claim.

## A

To recover under the DTPA, plaintiffs must prove that they are consumers, that defendants engaged in a false, misleading, or deceptive act, and the act constituted a producing cause of their damages. *See Doe v. Boys Club*, 907 S.W.2d 472, 478 (Tex. 1995); Tex. Bus. & Com. Code Ann. § 17.50(a)(1) (Vernon Supp. 2002). "A consumer is an individual who 'seeks or acquires by purchase or lease, any goods or services.'" *Nast v. State Farm Fire and Cas. Co.*, 82 S.W.3d 114, 122 (Tex. App.--San Antonio 2002, no pet. h.) (quoting Tex. Bus. & Com. Code Ann. § 17.45(4) (Vernon Supp. 2002)). "Whether or not a plaintiff is a consumer is a question of law, unless there is a dispute concerning factual issues that create consumer status." *Id.* (citing *Lukasik v. San Antonio Blue Haven Pools, Inc.*, 21 S.W.3d 394, 401 (Tex. App.--San Antonio 2000, no pet.)).

The district court held *inter alia* that the debenture holders were not "consumers" under the DTPA because they did not acquire goods or services from Morgan Stanley or Lumpkins since they were neither parties to, nor third-party beneficiaries of, the Allwaste-Morgan Stanley Letter Agreement. Plaintiffs contend the district court erroneously imposed a privity requirement between them and Lumpkins or Morgan Stanley.

Plaintiffs' argument is based on a misunderstanding of the district court's decision. The court held that plaintiffs did not acquire services from Lumpkins or Morgan Stanley because the contract for services was between Morgan Stanley and Allwaste and the debenture holders were neither parties

- 35 -

to, nor third party beneficiaries of, that agreement. The court did not conclude that contractual privity was necessary; it simply looked at the legal arrangement under which Morgan Stanley provided services and held that the debenture holders were not part of that arrangement. Although it expressed in contractual terms the absence of allegations that plaintiffs had sought or acquired services from Lumpkins, it did not mistakenly erect a privity bar.

B

The district court held *inter alia* that defendants were entitled to judgment dismissing plaintiffs' DTPA claim because the debenture holders could not qualify as consumers since they did not seek or acquire services from Morgan Stanley and Allwaste did not acquire them with the intent to benefit the debenture holders. Plaintiffs argue that they are consumers because the Allwaste Board intended that Morgan Stanley's services would benefit the Allwaste stockholders, and that "whether the Board's intent extended further is an issue of fact." Appellants Br. at 53. They maintain that they submitted evidence that the Allwaste Board knew this information was disseminated to debenture holders, that the Board sought to aid stockholders in making decisions, and that it knew the debenture holders would receive the same information. Therefore, they assert that it is logical to conclude that the Board intended the debenture holders to benefit from this information and make decisions upon it as well.

Plaintiffs' argument fundamentally misunderstands the nature of defendants' Rule 12(c) motion. The issue whether the Allwaste Board acquired services from Morgan Stanley with the intent to benefit the debenture holders is not one of fact, it is a question of pleading adequacy: whether plaintiffs have alleged in non-conclusory terms that Allwaste acquired Morgan Stanley's services regarding the Allwaste-Philip merger with the intent to benefit the debenture holders. The answer

to this question is that plaintiffs have not adequately pleaded this essential predicate. Neither the DTPA paragraphs, *see* Compl. ¶¶ 104-109, nor the underlying factual allegations of the complaint, address this matter. In fact, ¶ 22 asserts that "Allwaste retained Morgan Stanley as investment bankers to represent *it* in the sale discussions and, among other things, render an opinion as to whether the sale offer was fair[.]" *Id.* ¶ 22 (emphasis added). At most, the complaint avers that defendants knew that Allwaste would and did disseminate the Fairness Opinion and related due diligence information to the debenture holders, *see id.* ¶¶ 31-32, not that Allwaste acquired the services from Morgan Stanley with the intent to benefit the debenture holders.

The district court did not err in dismissing plaintiffs' DTPA cause of action.

## VIII

Although we have subjected plaintiffs' complaint to careful scrutiny, this opinion does not stand for undue formalism in pleading or contradict the intent and spirit of Rule 8(a) and (e)(1). It does, however, emphasize that pleadings matter when fraudulent joinder and Rule 12(c) issues are decided. When a court addresses fraudulent joinder and determines whether there is any possibility that a plaintiff will be able to establish a cause of action against the in-state defendant, it looks for a reasonable possibility--not merely a theoretical one--that the plaintiff can establish a claim. *See Badon*, 236 F.3d at 286 n.4.[25] This standard necessarily requires an evaluation of the allegations of

---

[25]We held in *Badon*:

> Plaintiffs appear to argue that *any mere theoretical possibility* of recovery under local law--no matter how remote or fanciful--suffices to preclude removal. We reject this contention. As the cited authorities reflect, there must at least be arguably a *reasonable* basis for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder.

the state court complaint,[26] because it is by referring to this pleading that a court assesses whether a reasonable theory, or merely a theoretical one, has been asserted. Regarding judgment on the pleadings, when a court decides whether beyond doubt a plaintiff cannot recover as a matter of law, the content of the complaint is critical. This is so because the question to be decided--whether the plaintiff would be "entitled to relief under any set of facts or any possible theory that he could prove *consistent with the allegations in the complaint*," *Jones*, 188 F.3d at 324 (emphasis added)--is tethered to the averments.

Moreover, we are confident that, as plaintiffs have pleaded their complaint, Texas law does not intend for defendants to be liable to the debenture holders. Texas has adopted standards that are designed to restrict the universe of persons who are merely peripheral to a legal relationship but are permitted to sue for wrongdoing committed within that relationship. Like other jurisdictions, Texas is concerned by "the potential for 'unlimited liability,'" *Ernst & Young*, 51 S.W.3d at 580, that could call parties to account for conduct intended only to affect another participant in the legal relationship. Texas thus limns the group of potential plaintiffs without barring claims that can be brought both logically and justly. It does so in the context of negligence liability by restricting the class of persons who are owed a duty. Negligent misrepresentation liability is limited to persons, or a limited group of persons, for whose benefit and guidance a person intends to supply information or knows that the recipient intends to supply it. Breach of fiduciary duty claims are restricted to a group of plaintiffs who can establish the existence of a confidential or similar relationship that gives rise to a fiduciary

---

*Id.* (emphasis in original).

[26]Of course, when a summary judgment-like procedure is used, the court examines more than the complaint. As we have explained, the district court did not fully follow that procedure in this case.

- 38 -

duty. Fraud requires that the plaintiff prove that the maker of the misrepresentation had information that would lead him to conclude that there was an especial likelihood that it would reach another person and influence that person's conduct. And under the DTPA, a plaintiff must be a consumer, that is, one who seeks or acquires, by purchase or lease, any goods or services. These limitations are essentially akin to, if they are not in fact, elements of the claims that must be properly pleaded. We do not impose a heightened pleading standard. But, considering the constraints on claims by individuals peripheral to a legal relationship between other parties, we conclude that plaintiffs must plead facts that, viewed favorably, demonstrate that they fall within the circumscribed class of individuals eligible to bring a claim.

If our decision upholding dismissal of this lawsuit at the pleading stage appears somewhat hard, we stress that the complaint could have been drafted to withstand dismissal had there been underlying facts to support the claims. Moreover, it is not unusual for plaintiffs who oppose a motion to dismiss to request leave to amend in the event the motion is granted. Although the denial of such a motion may not be an abuse of discretion, *see, e.g., Herrmann Holdings Ltd. v. Lucent Technologies Inc.,* 302 F.3d 552, 567 (5th Cir. 2002) (upholding denial of leave to amend where plaintiffs had already filed original complaint and two amended complaints), our cases support the premise that "[g]ranting leave to amend is especially appropriate . . . when the trial court has dismissed the complaint for failure to state a claim[,]" *Griggs v. Hinds Junior College*, 563 F.2d 179, 180 (5th Cir. 1977) (per curiam) (addressing Rule 12(b)(6) dismissal). In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs

advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

We inquired of the parties during oral argument whether plaintiffs had sought leave to amend in the district court. Plaintiffs' counsel stated that plaintiffs had not filed a separate motion for leave to amend, but, in the context of the motion briefing, they had "specifically suggested that [they] would like the opportunity to [amend] if the court was inclined to grant the motion of the basis of the complaint as it currently existed."[27] We have carefully studied the record and found in plaintiffs' reply and objections to defendants' motion for judgment only a narrow assertion that "plaintiffs should be given the opportunity to amend their Complaint." R. 442 n.3. This contention was made, however, in the alternative in a footnote, in the limited context of plaintiffs' fraud claim.[28] The only general request we have located is a procedurally inapposite one under Rule 56(f) for delay until plaintiffs

---

[27]Plaintiffs' counsel stated:

> I don't believe that we filed a separate motion for leave to amend, but in the context and in the briefs of the motion on the motion for judgment on the pleadings, I do recall that it was specifically suggested that we would like the opportunity to do that if the court was inclined to grant the motion on the basis of the complaint as it currently existed. Because we do feel that . . . allegations, if they're not currently in the complaint, could certainly in good faith be set forth. So I do think that that issue was before the district court. Although no amended complaint was ever actually given to the district court, I believe we were waiting to get a thumbs up from the court to do that, if the court desired us to do so.

[28]In their reply brief in support of their motion to remand, plaintiffs stated that they "reserve[d] the right to amend their Petition to assert breach of contract claims based upon the existence of an implied or oral contract." R. 134. As we explain *supra* at note 6, plaintiffs have not appealed the dismissal of their breach of contract claim, so this assertion would be irrelevant even if plaintiffs had advanced it in response to defendants' motion for judgment on the pleadings. They also asserted that, following remand to state court and discovery concerning their claims against Lumpkins, "plaintiffs can amend their pleadings, if necessary." *Id.* at 133. This statement pertains to amending their complaint in state court and is not a request for leave to amend in the district court.

could conduct discovery. *See id.* at 429-428. Nor have plaintiffs assigned as error on appeal the district court's failure to allow them to amend their complaint. Thus even had plaintiffs moved for and been denied leave to amend, they would have waived any error on this basis by failing to raise the issue in their brief on appeal. *See, e.g., In re Tex. Mtg. Servs. Corp.*, 761 F.2d 1068, 1073-74 (5th Cir. 1985) (collecting authorities).

\* \* \*

The district court did not err in concluding that Lumpkins was fraudulently joined and that defendants were entitled to judgment on the pleadings. Accordingly, the judgment is

AFFIRMED.