IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 20, 2008

Charles R. Fulbruge III
Clerk

No. 07-20320

SOUTHWESTERN BELL TELEPHONE, LP, doing business as AT&T Texas

Plaintiff-Appellant

v.

CITY OF HOUSTON

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, BARKSDALE, and BENAVIDES, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Southwestern Bell Telephone, L.P. (AT&T), contests the dismissal of its claims that a City of Houston, Texas, ordinance violates the Federal Telecommunications Act of 1996 (FTA), 47 U.S.C. § 151 et seq. Primarily at issue are FTA §§ 253(a) and 253(c). Section 253(a) proscribes state and local governments from prohibiting the ability of any entity to provide telecommunications service. On the other hand, FTA § 253(c) is a safe-harbor provision preserving a government's power to manage its public rights-of-way. AT&T maintains: FTA § 253 provides a private right enforceable under 42 U.S.C. § 1983; and the ordinance is preempted by the FTA. AFFIRMED.

I.

As part of its providing local service in the City, AT&T installed telecommunications facilities in the public rights-of-way. In April 2005, the City adopted Ordinance 2005-0371, requiring owners of facilities located in those rights-of-way to bear the cost of relocating their equipment to accommodate public-works projects. HOUSTON CODE OF ORDINANCES § 40-393. The ordinance does not specifically target telecommunications equipment, instead defining "facility" as "any structure, device, or other thing whatsoever that is installed or maintained in, on, within, under, over or above a public right-of-way within the city". Id. § 40-391.

Relying on the ordinance, the City notified AT&T it would be required to remove its public-rights-of-way facilities in connection with a drainage-improvement project. AT&T relocated its facilities at a cost of approximately $420,000.

In this action, AT&T seeks to recover, inter alia, those relocation costs, asserting a claim under the FTA through § 1983, a federal preemption claim, a federal takings claim, and various state-law claims. The City moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The motion concerning the § 1983 and preemption claims was under Rule 12(b)(6), the City's maintaining: there is no Congressional intent to allow actions under § 1983 for violations of FTA § 253; and the FTA specifically excludes preemption of a municipality's right to maintain its rights-of-way.

The district court held no private right exists under FTA § 253 that may be enforced under § 1983. It also held the ordinance resided within FTA § 253's safe-harbor provision and, therefore, is not preempted. Because it was not ripe, the federal-takings claim was dismissed without prejudice. The court declined to exercise supplemental jurisdiction over the state-law claims.

II.

AT&T appeals the district court's holding: FTA § 253 provides no private right enforceable pursuant to § 1983; and the ordinance is not preempted. A Rule 12(b)(6) dismissal for failure to state a claim is reviewed de novo. E.g., Fin. Acquisition Partners LP v. Blackwell, 440 F.3d 278, 286 (5th Cir. 2006). As part of our determining whether AT&T stated a claim sufficient to avoid dismissal, the facts alleged in its complaint are taken as true, with those allegations being construed in the light most favorable to AT&T, the non-movant. E.g., Muhammad v. Dallas County Cmty. Supervision & Corr. Dep't., 479 F.3d 377, 379 (5th Cir. 2007). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face". Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (citations and footnote omitted).

## A.

AT&T maintains Congress implicitly created a private right in FTA § 253, enforceable pursuant to § 1983. Although three other circuits have held to the contrary, as discussed infra, this is an issue of first impression for our circuit.

To pursue a claim under § 1983, a "plaintiff[] must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law". Resident Council of Allen Parkway Vill. v. HUD, 980 F.2d 1043, 1050 (5th Cir. 1993) (emphasis added) (citation omitted). In other words, "[§] 1983 confers no substantive rights, but merely provides a remedy for the violation [, by a person acting under color of state law,] of rights secured under the Constitution and laws of the United States". Kirchberg v. Feenstra, 708 F.2d 991, 1000 (5th Cir. 1983) (emphasis added) (citations omitted).

It is presumed Congress did not intend to create a private enforceable right; the burden is on the plaintiff to show otherwise. E.g., Acara v. Banks, 470

F.3d 569, 571 (5th Cir. 2006) (per curiam). Regarding showing such a right's being enforceable through § 1983,

> [i]t is essential to a private enforcement action under § 1983 . . . that the federal statute in question unambiguously give rise to privately enforceable, substantive rights. The inquiry in this context is virtually the same as that involved in private rights of action implied directly from a federal statute rather than by way of § 1983.

Johnson v. Hous. Auth. of Jefferson Parish, 442 F.3d 356, 359 (5th Cir. 2006) (footnotes omitted) (first emphasis in original).

As clarified by the Supreme Court, that analysis requires courts to "first determine whether Congress intended to create a federal right". Gonzaga Univ. v. Doe, 536 U.S. 273, 283 (2002) (emphasis in original). "For a statute to create such private rights, its text must be phrased in terms of the persons benefited." Id. at 284 (citation and internal quotation marks omitted). "Accordingly, where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action". Id. at 286 (emphasis added).

For this action, that determination focuses on whether "the [FTA] creates an individually enforceable right in the class of beneficiaries to which [AT&T] belongs". City of Rancho Palos Verdes, Cal. v. Abrams, 544 U.S. 113, 120 (2005) (citing Gonzaga, 536 U.S. at 285); see also Johnson, 442 F.3d at 359 (requiring the statute to unambiguously give rise to private enforceable rights). As dictated by the plain language of § 1983, only "rights, not the broader or vaguer 'benefits' or 'interests', . . . may be enforced under" that section. Gonzaga, 536 U.S. at 283 (emphasis in original). "The [Supreme] Court's approach to § 1983 enforcement of federal statutes has been increasingly restrictive; in the end, very few statutes are held to confer rights enforceable under § 1983." Johnson, 442 F.3d at 360.

Section 253(a) of the FTA provides: "No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the

effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service". 47 U.S.C. § 253(a). The safe-harbor provision, § 253(c), states:

> Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

47 U.S.C. § 253(c).

Five circuits are split three to two on whether FTA § 253 creates a privately enforceable right. The Sixth and Eleventh Circuits hold it does. BellSouth Telecomms., Inc. v. Town of Palm Beach, 252 F.3d 1169, 1191 (11th Cir. 2001); TCG Detroit v. City of Dearborn, 206 F.3d 618, 624 (6th Cir. 2000). (Although obviously not determinative for deciding whether a privately enforceable right is created, neither decision incorporated § 1983.) Those two decisions, however, were rendered prior to the Supreme Court's above-described clarification in Gonzaga.

As discussed infra, the more persuasive reasoning is found in the Second, Ninth, and Tenth Circuits' holding, post-Gonzaga, that FTA § 253(a) does not create a private right enforceable under § 1983. NextG Networks of NY, Inc. v. City of New York, 513 F.3d 49, 52-54 (2d Cir. 2008) (agreeing with Ninth and Tenth Circuits that "§ 253 does not create a private right of action for damages" that may be enforced through § 1983); Sprint Telephony PCS, L.P. v. County of San Diego, 490 F.3d 700, 717-18 (9th Cir. 2007) (stating "§ 253(a) does not designate companies like [AT&T] as the 'identifiable class' required for an enforceable § 1983 right"); Qwest Corp. v. City of Santa Fe, N.M., 380 F.3d 1258, 1265 (10th Cir. 2004) (ruling "nothing in the text or structure of § 253 indicates an intention to create a private right" that may be enforced through § 1983).

5

These three decisions are consistent with our court's requiring, as discussed supra, the federal statute to "unambiguously give rise to privately enforceable, substantive rights". Johnson, 442 F.3d at 359 (emphasis in original) (footnote omitted).

1.

Neither FTA section at issue focuses on rights granted to telecommunications providers. Section 253(a) is couched entirely in prohibitions on what the state or local government cannot do, rather than on a right for telecommunications companies. It states that "[n]o State or local statute or regulation, or other . . . legal requirement, may prohibit". 47 U.S.C. § 253(a). The section is not "phrased in terms of the persons benefited", see Gonzaga, 536 U.S. at 284 (citation and internal quotation marks omitted); rather, it prohibits state and local governments' conduct. As held by the Tenth Circuit, FTA § 253(a) "is not focused on the benefits granted to the telecommunications providers [but] focuses on restricting the type of telecommunications regulations a local authority may enforce". Qwest, 380 F.3d at 1265.

On the other hand, if the FTA safe-harbor provision "benefits" anyone, it is state and local governments, whose rights "to manage the public rights-of-way" are protected. 47 U.S.C. § 253(c). The benefit to these governmental entities is not the type of benefit required to imply a private right on behalf of a telecommunications provider, such as AT&T.

2.

Even were our court to determine these FTA sections create an individually enforceable right, only a rebuttable presumption would be established; it may be overcome with "the statute's creation of a comprehensive enforcement scheme". Rancho Palos Verdes, 544 U.S. at 120 (citation and internal quotation marks omitted). Restated, the existence of such an

enforcement scheme in the statute counsels that Congress did not intend also to provide a private right enforceable through § 1983.  Id.

Pursuant to FTA § 253(d), the Federal Communications Commission is charged with "preempting the enforcement" of laws violating FTA § 253(a).  This comprehensive enforcement scheme further supports our concluding Congress did not intend to create a private right enforceable under § 1983.  See Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n, 453 U.S. 1, 20-21 (1981).

Accordingly, because the FTA does not unambiguously establish a private enforceable right, and, in the alternative, because FTA § 253(d) contains a comprehensive enforcement scheme, Congress did not intend to create a private right, enforceable under § 1983, for claimed violations of FTA § 253(a).

B.

For its other issue on appeal, AT&T maintains the City's ordinance is preempted by the FTA.  A plaintiff's seeking relief from a state regulation on the ground of preemption by a federal statute "presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve".  Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96 n.14 (1983) (citations omitted); see also Planned Parenthood of Houston and Se. Tex. v. Sanchez, 403 F.3d 324, 331 (5th Cir. 2005) ("It is well-established that the federal courts have jurisdiction under 28 U.S.C. § 1331 over a preemption claim seeking injunctive and declaratory relief." (footnote omitted)).  In sum, as held in 2004 in the above-discussed Tenth Circuit decision in Qwest, "[a] party may bring a claim under the Supremacy Clause that a local enactment is preempted even if the federal law at issue does not create a private right of action".  380 F.3d at 1266.

As noted above, FTA § 253(a) proscribes the City from, inter alia, prohibiting the ability of any entity to provide interstate or intrastate telecommunications service.  47 U.S.C. § 253(a).  Ordinances satisfying the FTA § 253(c) safe-harbor provision, however, are exempt from that prohibition.  As

quoted earlier, FTA § 253(c) provides, in relevant part: "Nothing in [§ 253] affects the authority of a State or local government to manage the public rights-of-way". 47 U.S.C. § 253(c) (emphasis added).

1.

En route to the safe harbor, these sub-issues raised by AT&T must be navigated. None blocks entry.

a.

For starters, AT&T maintains the voyage cannot begin because it was entitled to discovery prior to the district court's dismissal-ruling. To the contrary, when deciding, under Rule 12(b)(6), whether to dismiss for failure to state a claim, the court considers, of course, only the allegations in the complaint. E.g., Norris v. Hearst Trust, 500 F.3d 454, 464 (5th Cir. 2007).

b.

Getting underway, AT&T contends FTA § 253(c) incorporates the separate law of each State by preserving whatever powers, as well as any limitations on them, a city possessed when the FTA was enacted. AT&T, however, did not raise this issue in opposition to the City's motion to dismiss. Therefore, it was not addressed by the district court.

"This Court will not consider an issue that a party fails to raise in the district court absent extraordinary circumstances". Leverette v. Louisville Ladder Co., 183 F.3d 339, 342 (5th Cir. 1999) (citation omitted). Among other considerations, no such extraordinary circumstances exist here. This issue is waived.

c.

Approaching the safe harbor, AT&T insists the district court was required first to determine whether the ordinance violates FTA § 253(a), rather than assuming a violation and proceeding with the FTA § 253(c) safe-harbor analysis. The court did not err in that regard.

Assuming, arguendo, the ordinance violates FTA § 253(a), it is explicitly not preempted if it falls within the safe harbor. To say the least, requiring a FTA § 253(a) analysis, notwithstanding an ordinance's meeting the safe-harbor provision, would be an exercise in futility.

2.

Finally reaching the safe harbor, the parties dispute only whether the ordinance is competitively neutral and nondiscriminatory. Accepting, as required, AT&T's allegations as true, the district court held the complaint failed to allege discrimination. AT&T maintains complaint paragraph 32 satisfies this requirement:

> Moreover, the Ordinance and the Utility Relocation Program go far beyond requiring fair and reasonable compensation from AT&T Texas on a competitively neutral and nondiscriminatory basis for use of the public rights-of-way. As a facilities-based [FTA Incumbent Local Exchange Carrier] with provider of last resort obligations under state law, AT&T Texas will be forced to bear substantial costs of relocation to accommodate "public works projects" that the City will not impose upon telecommunications providers who do not own and maintain poles, wires, and similar facilities. As such, the Ordinance and the Utility Relocation Program and the City's imposition and collection of relocation costs violates the FTA, 47 U.S.C. § 151, et seq., in particular, 47 U.S.C. § 253(a),(c).

(Emphasis added.)

Accepting, as we must, the allegations in the complaint, AT&T alleges only that the City will not impose relocation costs on telecommunications owners who do not maintain facilities in the City's rights-of-way. AT&T's status as the primary and, therefore, largest telecommunications provider in the City means it maintains facilities in the rights-of-way and necessarily correlates into a greater chance it, as opposed to other such providers, will be required to relocate equipment pursuant to the ordinance. Requiring only such facility owners to

bear relocation costs is, as required by FTA § 253(c), "competitively neutral and nondiscriminatory", notwithstanding AT&T's status as provider of last resort. 47 U.S.C. § 253(c).

Accordingly, the ordinance is sheltered by the safe harbor. There is no preemption.

### III.

For the foregoing reasons, the judgment is AFFIRMED.