# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-50618
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

February 4, 2016

Lyle W. Cayce
Clerk

MED RX/SYSTEMS, P.L.L.C., doing business as Alimentos, doing business as Med Care Pharmacy, doing business as Good Start,

  Plaintiff - Appellant

v.

TEXAS DEPARTMENT OF STATE HEALTH SERVICES; COMMISSIONER KIRK COLE, In His Official Capacity,

  Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:15-CV-324

Before WIENER, HIGGINSON, and COSTA, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:*

Plaintiff Med RX/Systems, P.L.L.C. appeals the district court's grant of a motion for judgment on the pleadings filed by Defendants the Texas Department of State Health Services (DSHS) and its Commissioner, Kirk Cole, in his official capacity.  We affirm.

---

 * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-50618

I.

The Special Supplemental Nutrition Program for Women, Infants and Children (WIC) is a federal program through which states receive grants to provide food to low-income beneficiaries. In Texas, defendant DSHS administers that program. DSHS enters into vendor agreements with retail stores, which accept vouchers from WIC beneficiaries and submit those vouchers to the state for reimbursement. Each vendor must retain invoices and receipts for its purchases and sales; when a vendor fails to do so, DSHS must recover the money it paid for so-called "unsubstantiated sales" and, upon finding a pattern of such sales, disqualify the vendor from program participation for three years.

Plaintiff, which operates multiple retail stores, became a WIC vendor on October 1, 2010, when its initial one-year vendor agreements with DSHS became effective. Plaintiff and DSHS entered into similar one-year contracts in subsequent years. In these contracts, Plaintiff agreed to "[c]omply with the Vendor Agreement and Federal and State statutes, regulations, policies, and procedures governing [the WIC program], including any changes made during the Agreement period." Each agreement incorporated by reference certain state WIC policies and all revisions thereto, which Plaintiff acknowledged having received and accepted at the time it entered into the vendor agreements.

When Plaintiff became a WIC vendor, one of these policies—"WIC Policy WV:1.0"—explained that the state would recover funds it paid for unsubstantiated sales. That policy also stated that DSHS would provide "administrative review for any adverse action affecting participation in" the WIC program, with some exceptions—including "[d]isputes regarding food transaction payments and vendor claims (other than the opportunity to justify or correct a vendor overcharge or other errors, as permitted by 7 C.F.R. Section

2

246.12(k)(3))."[1]   This limitation on administrative review echoes a federal regulation that prohibits state agencies administering the WIC program from providing administrative review of such disputes.   *See* 7 C.F.R. § 246.18(a)(1)(iii)(J).  The version of WIC Policy WV:01.0 effective on October 1, 2011, and thereafter, also stated: "The vendor claim determination by the [state agency] regarding the amount of the unsubstantiated WIC sales is not subject to administrative review."   Plaintiff does not contest that these provisions apply to the unsubstantiated sale determinations at issue, but argues instead that denying administrative review of such decisions is illegal.

In August 2012, Defendant notified Plaintiff that it would be subject to an invoice audit for the period of August 1, 2011, through July 31, 2012.  After Plaintiff submitted the requested purchase invoices and other records, DSHS determined that those records showed unsubstantiated WIC sales of approximately $42,000.  DSHS gave Plaintiff an additional twenty days to "submit additional or clarifying invoices and information," warning that "[a]fter this time has elapsed no additional invoices or other requested materials will be considered" and that "[f]ailure to comply with [the] request will result in disqualification pursuant to WIC Policy WV:01.0."  Plaintiff then submitted additional documentation.  Then, in a letter dated July 26, 2013, DSHS told Plaintiff that its review of the additional invoices supported an *upward* adjustment of the amount of unsubstantiated sales to approximately $125,000.  That letter informed Plaintiff that it would be disqualified from the WIC program and included the following statement:

> Federal WIC regulations at 7 CFR, Section 246.18(a)(1)(iii)(J) prohibit the State agency from providing administrative reviews

---

[1] The version of WIC Policy WV:01.0 that became effective on October 2012 explains that the agency's provision of a twenty-day period to submit additional or clarifying purchase invoices "is considered an opportunity to justify or correct a vendor overcharge or error" within the meaning of section 246.12(k)(3).

No. 15-50618

for disputes regarding vendor claims, other than the opportunity to justify a vendor overcharge or other error, as permitted by 7 CFR, Section 246.12(k)(3)] [sic]. **No hearing will be available to appeal the State agency's determination that Med/RX Systems PLLC has unsubstantiated WIC sales in the amount of $125,257.20, which the State agency must recover.**

Plaintiff, which denies having any unsubstantiated sales, requested rescission of the adverse action and an additional twenty days to "respond to the new allegations"; in the alternative, Plaintiff requested an administrative review hearing.

DSHS granted such a hearing, after which the hearing officer issued an order finding that Plaintiff had unsubstantiated sales in the amount of $126,863.08[2] during the relevant period, had violated WIC Policy WV:01.0, and had received a fair opportunity to contest the charges. She rejected the argument that DSHS should have provided an additional twenty days to submit documentation after DSHS adjusted its determination of unsubstantiated WIC sales, reasoning that the same audit period was involved and finding that "[t]he evidence establishes that [Plaintiff] was provided 20 days to respond to the allegation of unsubstantiated sales as outlined in the July 26, 2013 letter." She also dismissed Plaintiff's argument that it did not own or operate some of the stores to which unsubstantiated sales were attributed, noting that each of Plaintiff's vendor agreements included account numbers that corresponded to those stores. Finally, she stated that "federal law precludes this tribunal from reviewing [Defendants'] vendor claim determination regarding the amount of the unsubstantiated WIC sales." As

---

[2] It is unclear what accounts for the slight difference between this figure and the $125,257.20 figure referenced in earlier correspondence.

such, she excluded evidence that Plaintiff attempted to introduce to controvert the unsubstantiated WIC sales determination.

Plaintiff filed suit in Texas state court, alleging that despite the federal regulation and WIC policies noted above, the Constitution entitled it to challenge Defendants' unsubstantiated sales determination through administrative review. Plaintiff brought procedural due process and Contract Clause claims pursuant to 42 U.S.C. § 1983 and sought damages and declaratory and injunctive relief. [3] Defendants removed the case to federal court and filed a motion for judgment on the pleadings, which the district court granted. This appeal timely followed the district court's entry of final judgment.

## II.

We review de novo dismissals pursuant to Federal Rule of Civil Procedure 12(c). *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). The standards to be applied to a Rule 12(c) motion are the same as those governing motions brought under Federal Rule of Civil Procedure 12(b)(6). *Id.* at 313 n.8. Thus, taking the complaint's well-pleaded facts as true and viewing them in the light most favorable to the plaintiff, we ask whether "the complaint states a valid claim for relief." *Id.* at 312–13 (citation omitted); *see also Turbomeca, S.A. v. Era Helicopters LLC*, 536 F.3d 351, 354 (5th Cir. 2008). Documents attached to the defendant's motion "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015) (citation omitted). [4]

---

[3] Plaintiff's complaint also references the Texas Constitution and a general "right to judicial review under state and federal law," but its appellate brief only presses arguments based on the federal Constitution's Due Process and Contract Clauses.

[4] Defendants submitted vendor agreements and letters between the parties in support of their Rule 12(c) motion. Plaintiff's complaint refers to these documents in detail; moreover,

No. 15-50618

III.

A.

Plaintiff brought two causes of action under 42 U.S.C. § 1983 for alleged violations of its constitutional rights under the Fifth and Fourteenth Amendments, as well as the Contracts Clause. We first explain that the district court did not err in concluding that Plaintiff cannot seek damages under § 1983.

"Section 1983 provides a private right of action for damages to individuals who are deprived of 'any rights, privileges, or immunities' protected by the Constitution or federal law by any 'person' acting under the color of state law." *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007) (quoting 42 U.S.C. § 1983). The Supreme Court has "held that a State is not a 'person' against whom a § 1983 claim for money damages might be asserted." *Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)). This rule extends to "arms of the state," *Howlett v. Rose*, 496 U.S. 356, 365 (1990), and to a state's "officials acting in their official capacities," *Will*, 491 U.S. at 71. Thus, Plaintiff's § 1983 claims against DSHS and Cole in his official capacity are barred insofar as Plaintiff seeks economic damages or other retrospective relief. *See Machete Prods., L.L.C. v.* Page, --- F.3d ---, 2015 WL 9487714, at *3 (5th Cir. 2015).

Nonetheless, "a state official in his or her official capacity, when sued for injunctive relief, [is] a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)).

---

Plaintiff has not objected to their consideration. *See Great Plains Trust*, 313 F.3d at 313–14 (noting that a plaintiff had waived any objection to consideration of documents attached to a Rule 12(c) motion by failing to argue such consideration was erroneous). We therefore include these documents in our review.

No. 15-50618

Thus, the remaining question is whether the district court erred in concluding that Plaintiff had not stated a claim for prospective relief against Cole.

B.

Plaintiff's primary argument on appeal, tendered as an independent ground of error and raised in support of each of Plaintiff's claims, is that the district court failed to recognize that 42 U.S.C. § 1786(n) evinces congressional intent to make administrative review available for unsubstantiated sale determinations. Plaintiff did not so much as hint at this argument—or even cite § 1786(n)—in its complaint or opposition to Defendants' Rule 12(c) motion below. We "will not consider an issue that a party fails to raise in the district court absent extraordinary circumstances." *Sw. Bell Tel., LP v. City of Houston*, 529 F.3d 257, 263 (5th Cir. 2008) (citation omitted). Plaintiff has not attempted to demonstrate "extraordinary circumstances" sufficient to escape this general rule; indeed, after Defendants pointed out Plaintiff's failure to raise this issue below, Plaintiff declined to file a reply brief. Accordingly, "[t]his issue is waived." *Id.*[5]

We turn now to Plaintiff's claim under the Due Process Clause, which guarantees notice and an opportunity to be heard before the deprivation of a constitutionally protected interest. *See LaChance v. Erickson*, 522 U.S. 262, 266 (1998); *Franceski v. Plaquemines Parish Sch. Bd.*, 772 F.2d 197, 199 (5th Cir. 1985). "To bring a procedural due process claim under § 1983, a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001). The Constitution does not itself create property interests, which instead "stem from independent sources such

---

[5] In any event, the district court's dismissal of Plaintiff's claims was not based on an erroneous interpretation of 42 U.S.C. § 1786(n), but instead on the independent grounds discussed below.

as state statutes, local ordinances, existing rules, contractual provisions, or mutually explicit understandings." *Blackburn v. City of Marshall*, 42 F.3d 925, 936–37 (5th Cir. 1995). A property interest created by contract is "defined by [its] terms." *Bd. of Regents v. Roth*, 408 U.S. 564, 578 (1972).

In support of its due process claim, Plaintiff argues that it had an "unfettered entitlement" to the money and WIC program participation at issue, and that due process required the opportunity to present evidence in an administrative appeal of Defendants' decision. Plaintiff's claim fails because, when Plaintiff became a WIC vendor, it agreed that DSHS (1) would recover funds from and disqualify vendors with unsubstantiated sales and (2) would not provide administrative review for "[d]isputes regarding food transaction payments and vendor claims," except for providing the opportunity to submit additional invoices to the state agency (as Plaintiff did here). Plaintiff cannot now disregard these contractual limitations while relying on the remainder of the contracts to support its due process claim. *See Bullard v. Webster*, 623 F.2d 1042, 1046–47 (5th Cir. 1980) (holding that a federal employee could not show a due process violation based on his interoffice transfer because he contractually agreed to move to any location the government required). And to the extent Plaintiff argues that WIC Policy WV:01.0 and 7 C.F.R. § 246.18(a)(1)(iii)(J) themselves abridge due process by precluding administrative review for unsubstantiated sales determinations, the Constitution does not guarantee a right to a live hearing or appeal on all government decisions. *See, e.g.*, *Ohio ex rel. Bryant v. Akron Metro. Park Dist.*, 281 U.S. 74, 80 (1930) ("As to the due process clause of the Fourteenth Amendment . . . the right of appeal is not essential to due process, provided that due process has already been accorded in the tribunal of first instance."); *Gregory v. Merit Sys. Protection Bd.*, 96 F. App'x 690, 694 (Fed. Cir. 2004) (holding that internal review procedures satisfied due process, even though

employee could not appeal her demotion to the Merit Systems Protection Board); *Kramer v. Jenkins*, 806 F.2d 140, 141 (7th Cir. 1986) ("The due process clause does not require a hearing; it requires an opportunity to be heard."); *cf. Halbert v. Michigan*, 545 U.S. 605, 610 (2005) (noting that the Constitution does not require states to provide appellate review even of criminal convictions).

Nor has Plaintiff stated a claim under the Contract Clause, which provides: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. Courts apply a three-part test to Contract Clause claims. *Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 269 F.3d 494, 504 (5th Cir. 2001). "[T]he threshold inquiry"—and the only one we reach here—"is whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." *Id.* (quoting *Energy Reserves Grp., Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411 (1983)). As discussed above, Plaintiff's vendor agreements provided that administrative review *would not* be provided for the type of dispute that led to the complained-of sanctions. So in the words of the district court, Plaintiff cannot "show an impairment of contract as the contract included the very provision now challenged." Plaintiff waived its only counterargument—that WIC Policy WV:01.0 is "contrary to the legislative intent of" 42 U.S.C. § 1786(n) and "therefore, was *not* incorporated into the vendor agreements"—by failing to raise it below. *See Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 191 (5th Cir. 1996) (refusing to consider argument not presented in district court). In sum, the district court did not err in dismissing Plaintiff's claims.

## IV.

For the foregoing reasons, we AFFIRM the district court's dismissal of this action.