# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 30, 2022

Lyle W. Cayce
Clerk

No. 21-20369

CHARMAIN MCWILLIAMS, *individually and as mother and representative of* ESTATE OF ROBERT STEPHEN, JR., DECEASED; ROBERT STEPHEN, SR., *individually and as father and representative of* ESTATE OF ROBERT STEPHEN JR., DECEASED; CHANTIQUE JOHNSON, *as next of friend to* SERENITY STEPHENS AND JADYNE STEPHEN, *minors and children of* ROBERT STEPHEN JR., DECEASED; A'NEESHA RAWLS, *as next of friend to* NAOMI RAWLS, *a minor and child of* ROBERT STEPHEN JR., DECEASED; CRYSTAL JOHNSON, *as next of friend to* LYRIC STEPHEN, BOBBY STEPHEN, AND JOURNEY STEPHEN, *as minors and children of* ROBERT STEPHEN JR., DECEASED,

*Plaintiffs—Appellants*,

*versus*

CITY OF HOUSTON; NTUM AZA ALTORSHAN; LOURDES TORRES AHMED; RAUL SARDINAS; GABRIELLE ALSTON; IDELBIO PEREZ-GONZALEZ,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CV-345

Before RICHMAN, *Chief Judge*, and ELROD and OLDHAM, *Circuit Judges*.

Per Curiam:[*]

This case stems from the arrest and death of Robert Stephen Jr. while in jail. Plaintiffs, who are decedent Stephen's friends and relatives, appeal the district court's dismissal of the claims against the individual defendants and the City of Houston. Because Plaintiffs fail to show any reversible error by the district court, we AFFIRM.

I.

Robert Stephen Jr. was arrested by Houston Police Department Officer Gabrielle Alston for public intoxication after the officer received a call from a Domino's Pizza restaurant.[1] Alston brought Stephen directly to the Houston Central Jail. After they arrived at the jail, Stephen was screened by Defendant Raul Sardinas, who was the on-duty medical screener during Stephen's intake. Video evidence shows that he was able to walk when assisted and to talk[2] to jail personnel. Even though Stephen was able to comply "with the requests made by [Sardinas] during the screening and evaluation of him," the complaint alleged that Sardinas nonetheless "failed to have [Stephen] treated by any medical personnel" or to provide him with "any medication to treat [him] and assist in detoxing [him] before transporting him to an isolated cell."

At this time, Stephen was unable to stand on his own, so the jail officers "dragged" him to a cell. After being taken to his holding cell, video

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

[1] These facts are taken from Plaintiffs' Fourth Amended Complaint, the operative pleading on which the district court granted motions to dismiss on all claims.

[2] The district court viewed the video evidence upon Plaintiffs' request. And the parties do not object to the district court's consideration of the video on appeal. *See also Scott v. Harris*, 550 U.S. 372, 381 (2007) (authorizing a district court's viewing of "the facts in the light depicted by videotape").

evidence shows that Stephen was still able to communicate with staff while also sleeping and drinking. Defendant Officer Idelbio Perez-Gonzalez visited Stephen in his cell "to examine [him] and see why [he] was unable to walk." But Perez-Gonzalez did not "conduct a full physical examination" or provide medication to Stephen.

From Plaintiffs' pleadings, it is unclear how closely the defendants monitored Stephen's condition. The complaint states that "Defendant[s] alleged to have checked on [Stephen] every fifteen (15) minutes for seven (7) hours, which is approximately twenty-eight (28) times." Plaintiffs further allege that Defendants "performed" a "suicide assessment" of Stephen, and "administered an unknown liquid substance for [Stephen] to drink." But the complaint also alleges that the defendants "failed to meet [the City's monitoring] requirements or conduct the required face-to-face inspections," and that the Defendants "failed to check on [Stephen] every fifteen (15) and/or thirty (30) minutes." Video evidence shows that jail personnel viewed Stephen in his cell more than forty times during the time that he was detained. And even though these checks mainly consist of the officers walking by the cell while viewing Stephen in plain sight, others consist of the officers pausing to talk or interact with him.

On the morning after the arrest, jail officials found Stephen lying face down and not breathing. Senior Jail Medical Specialist Lourdes Torres Ahmed performed CPR and used a defibrillator, while another officer called for emergency medical assistance. But these efforts were unsuccessful, and Stephen was pronounced dead. Later it was determined that the underlying cause of Stephen's death was a cocaine overdose.

Plaintiffs have amended their complaint four times since filing their first complaint in February 2017. The operative complaint alleges twelve causes of action across three categories of claims. First, Plaintiffs allege

negligence under the Texas Tort Claims Act against each individual defendant and the City of Houston. Second, they assert § 1983 claims against each individual defendant alleging violations of the Eighth and Fourteenth Amendments. Third, they bring a claim for municipal liability under § 1983 against the City.

The individual defendants and the City moved to dismiss. Plaintiffs argued that surveillance footage from the jail showed clear violations of Stephen's constitutional rights. The district court granted the motion to dismiss after viewing the footage, holding that Plaintiffs had not pleaded any viable causes of action.

The district court dismissed Plaintiffs' TTCA claims against the individual defendants because those claims were barred under the TTCA's choice-of-remedies provision. And the court dismissed the TTCA claims against the City for a lack of immunity waiver. On the § 1983 claims against individual defendants, the district court dismissed the claims because the alleged facts are insufficient to defeat qualified immunity. Finally, the district court dismissed Plaintiffs' § 1983 municipal liability claims because the allegations were insufficient to support any municipal liability theory. All claims were dismissed with prejudice because the court determined that it would be futile for Plaintiffs to file yet another amended complaint. Plaintiffs timely appealed.

## II.

We review *de novo* a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6). *Sw. Bell Tel., LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *BG Gulf Coast LNG, L.L.C. v. Sabine-Neches Navigation Dist. of Jefferson Cnty., Tex.*, 49 F.4th 420, 426 (5th Cir. 2022) (internal quotation marks

No. 21-20369

omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And "a plain-tiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

## III.

The district court properly dismissed the TTCA claims[3] against the City because there was no waiver of immunity applicable here. To begin, we must distinguish between the Constitution's protections for States' sovereign immunities and governmental immunity. These immunities are critically different and too often conflated. The U.S. Constitution affords States two types of immunities. The first, Eleventh Amendment immunity, applies to suits between a State and a citizen of another State. *See* U.S. Const. amend. XI. The other, state sovereign immunity, prohibits a broader range of suits against States. *See Franchise Tax Bd. of Calif. v. Hyatt*, 139 S. Ct. 1485, 1496 (2019) ("The sovereign immunity of the States, we have said, neither derives from, nor is limited by, the terms of the Eleventh Amendment. Consistent with this understanding of state sovereign immunity, this Court has held that the Constitution bars suits against nonconsenting States in a wide range of cases." (internal quotation marks omitted)).

Neither of these constitutional sources of sovereign immunity are at stake in this case. Rather, this case implicates the TTCA, which recognizes governmental immunity under Texas law that "protects subdivisions of the

---

[3] Plaintiffs also brought negligence claims against the individual defendants under the TTCA, and the district court dismissed these claims. Because Plaintiffs did not brief this issue on appeal, they forfeit any challenge to the district court's dismissal. *SEC v. Hallam*, 42 F.4th 316, 327 (5th Cir. 2022) ("[A]ny issue not raised in an appellant's opening brief is forfeited."). We thus AFFIRM the district court's dismissal of this claim.

State, including municipalities and school districts." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 n.2 (Tex. 2008). That label can create some confusion because "immunities" held by arms of the State "government" often turn on principles of the federal constitutional sovereign immunity. But as relevant here, "governmental immunity" is no different than any other state-law defense to a state-law cause of action, which we apply when exercising supplemental jurisdiction. *See, e.g.*, *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 610 (5th Cir. 2007).

Thus, as an initial matter, we presume that a "political subdivision enjoys governmental immunity from suit to the extent that immunity has not been abrogated by the Legislature." *Tercero v. Tex. Southmost Coll. Dist.*, 989 F.3d 291, 297 (5th Cir. 2021) (citation omitted). On this issue, the parties agree that the City is afforded governmental immunity from certain claims. They disagree, however, as to whether the TTCA provides an immunity waiver for the present claims. The district court held that there was no immunity waiver, and we agree.

To determine whether there is a waiver of governmental immunity for the claims against the City, we apply Texas law. *See Gonzales v. Mathis Indep. Sch. Dist.*, 978 F.3d 291, 295 (5th Cir. 2020) ("[W]e apply Texas law to assess whether a waiver has occurred."); *Wilkerson v. Univ. of N. Tex.*, 878 F.3d 147, 154 (5th Cir. 2017) (holding that the defendants were "protected by governmental immunity against [the] claim under the Texas Tort claims Act."); *Aguirre v. City of San Antonio*, 995 F.3d 395, 422 (5th Cir. 2021) (applying the TTCA to determine whether the City of San Antonio's governmental immunity has been waived).

The Texas Legislature enacted the TTCA to provide a limited waiver of immunity. The TTCA states that "a municipality is liable under this chapter for damages arising from its governmental functions." Tex. Civ. Prac. &

Rem. Code § 101.0215.  Here, Plaintiffs' negligence claims concern the provision of police control and the operation of jails, which are specifically deemed to be "governmental functions" under the statute.  *Id.*

But "[w]hile section 101.0215(a) brings certain municipal functions within the purview of the TTCA," "Texas courts have held that section 101.0215 is not a waiver of immunity."  *Henderson v. Iowa Colony*, No. 01-15-00599-CV, 2016 WL 2586715, *2 (Tex. App.—Houston [1st Dist.] May 5, 2016, no pet.) (citation omitted); *Bellnoa v. City of Austin*, 894 S.W.2d 821, 826 (Tex. App.—Austin 1995, no writ).  Consequently, "to determine whether a municipality may be held liable for governmental functions listed in section 101.0215, [this court] must first determine whether the alleged harm meets the conditions of section 101.021."  *Bellnoa*, 894 S.W.2d at 826; *see Henderson*, 2016 WL 2586715, at *3.  Section 101.021 provides that a governmental unit in the state is liable for: (1) the use of motor-driven vehicles or equipment, (2) the condition or use of personal property, or (3) the condition or use of real property.  Tex. Civ. Prac. & Rem. Code § 101.021.

Here, Plaintiffs argue that the waiver of immunity for property torts should apply because "the jail, as property of the City, provided the backdrop for *actions of City employees*."  But as Plaintiffs themselves point out, the waiver of governmental immunity regarding the use of property "requires more than the property's mere involvement, and property does not cause injury if it does no more than furnish the condition making the injury possible."  *City of Sugarland v. Ballard*, 174 S.W.3d 259, 267 (Tex. App.—Houston [1st Dist.] 2005, no pet.).  Plaintiffs attempt to distinguish *Ballard* by arguing that the jail did more than "furnish the condition" for the injury because it "provided the backdrop" for the injury to occur.  But it is unclear how "providing a backdrop" is distinct from merely furnishing a condition.  Plaintiffs did not cite any case to support such a distinction, and we find their argument unconvincing.  Thus, as the district court correctly explained, because

No. 21-20369

Plaintiffs' allegations do not concern any of the three circumstances subject to the waiver of immunity, Plaintiffs' TTCA claims against the city must be dismissed.

IV.

Plaintiffs next argue that the district court erred when it dismissed their § 1983 claims against the individual defendants. They argue that the alleged facts "show that the Individual Defendants violated Mr. Stephen's clearly established constitutional right."

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021). To demonstrate the inapplicability of qualified immunity, Plaintiffs must allege (1) the violation of a federal constitutional or statutory right; and (2) that the right was clearly established at the time. *Id.* This court "may tackle these questions in whatever order it deems most expeditious." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Plaintiffs' allegations are insufficient on both prongs.

On the first prong, Plaintiffs allege that the individual defendants violated Stephen's right under the Fourteenth Amendment[4] "not to be denied, by deliberate indifference, attention to his serious medical needs." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). But even after taking all well-pleaded factual allegations as true and viewing them in the light most favorable to the plaintiffs, the alleged facts do not give rise to any finding of deliberate indifference. *Brown*, 623 F.3d at 255 (5th Cir. 2010). "[A]n official

---

[4] Plaintiffs also allege violations under the Eight Amendment. But these allegations fail under Rule 12(b)(6) because the Eight Amendment protects only those who have been criminally convicted, and Stephen was not criminally convicted. *Ingraham v. Wright*, 430 U.S. 651, 664-68 (1997).

cannot be found liable" for "deliberate indifference to a substantial risk of serious harm" unless: (1) the official knew of facts leading to an inference of a substantial risk of serious harm to the plaintiff; (2) the official drew that inference; and (3) the official disregarded the excessive risk to inmate safety. *Garza v. City of Donna*, 922 F.3d 626, 635-36 (5th Cir. 2019) (quoting *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994)).  And we have held that "a serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required."  *Sims v. Griffin*, 35 F.4th 945, 949 (5th Cir. 2022).

Based on Plaintiffs' allegations, one may dispute whether the defendants provided adequate medical care.  But "[d]eliberate indifference is 'a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'"  *Brown v. Callahan*, 623 F.3d 249, 255 (5th Cir. 2010) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)).  Plaintiffs never explain why the defendants should have recognized that Stephen was more than highly intoxicated and was in need of immediate medical care, or show that any of the individual defendants actually recognized such a need and disregarded it.  Thus, even after taking all well-pleaded factual allegations as true and viewing them in the light most favorable to the plaintiffs, the alleged facts do not warrant a finding of deliberate indifference.

And even assuming *arguendo* that a constitutional violation occurred, Plaintiffs' allegations are still lacking because the individual defendants' conduct was "not objectively unreasonable in light of clearly established law."  *Macias v. Salazar*, No. 21-51127, 2022 WL 3044654, *2 (5th Cir. Aug. 2, 2022).  "Showing that a right is clearly established 'is difficult,' and this showing is made only when 'it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"  *Parker v. Blackwell*, 23 F.4th 517, 522 (5th Cir. 2022) (quoting *Cunningham v.*

*Castloo*, 983 F.3d 185, 191 (5th Cir. 2020)).  Plaintiffs do argue that Stephen has the right "not to have [his] serious medical needs met with deliberate indifference."  *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (quoting *Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001)).  But such a proposition is too general to warrant finding that that "every reasonable official" in the defendants' position "would have understood that what he [was or was not] doing violates that right."  *Parker*, 23 F.4th at 522.

Plaintiffs also contend that our holding in *Bias v. Woods* establishes that Defendants' failure to treat someone who is unconscious constitutes deliberate indifference.  *Bias v. Woods*, 288 F. App'x. 158 (5th Cir. 2008).  But *Bias* is readily distinguishable from the present case.  In *Bias*, the plaintiff was unconscious following a suicide attempt.  *Id.* at 159–60.  The plaintiff had "slash[ed] his left wrist and t[ook] an overdose of seven different medications."  *Id.*  And he was found motionless "approximately twelve to sixteen hours after [his] suicide attempt."  *Id.*  Such a circumstance is hardly similar to the present case where the inmate's originally presented unconsciousness was caused by intoxication.  Plaintiffs contend that *Bias* stands for the broad proposition that "being unconscious was open and obvious and an exceptional circumstance obviously requiring immediate medical attention."  Unlike in *Bias*, the defendants here did not know what had caused Stephen's unconsciousness, and there was no "open and obvious" indication that emergency medical attention was needed.  *Bias*, 288 F. App'x. at 163.  And the Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality."  *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).  Because Plaintiffs' allegations fail under both prongs of qualified immunity, the district court properly dismissed their § 1983 claims against the individual defendants.

V.

Plaintiffs' § 1983 claims against the City were properly dismissed because they fail to allege sufficient facts supporting municipal liability under *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658 (1978). Municipal liability under § 1983 does not extend merely on a *respondeat superior* basis. *Id.* at 691. Plaintiffs must show that an official policy promulgated by the municipal policymaker was the moving force behind the violation of a constitutional right. *Piotrowski v City of Houston*, 237 F3d 567, 578 (5th Cir 2001). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Doe v Edgewood Indep. Sch. Dist.*, 964 F3d 351, 364–65 (5th Cir. 2020) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).

Plaintiffs brought § 1983 claims against the City under three different theories: (1) that "the City had certain interrelated de facto policies, practices, and customs that dictated [illegal] practices and illegal conduct"; (2) that the City failed to adequately train its employees; and (3) that the City ratified the illegal conduct by failing to discipline. Each will be addressed in turn.

A.

Plaintiffs did not allege sufficient facts supporting any violation of constitutional rights stemming from the City's policies. For the City to be liable under this theory, Plaintiffs must show "(1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose moving force is the policy or custom." *Horvath v. City of Leander*, 946 F.3d 787, 793 (5th Cir. 2020). And there are three ways to show an "official policy": (1) "written policy statements, ordinances, or regulations"; (2) a "widespread practice that is

so common and well-settled as to constitute a custom that fairly represents" the City's policy; or (3) under "rare circumstances," a single act can be considered a policy if done by an official or entity with "final policymaking authority." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) (citations and quotations omitted).

On appeal, Plaintiffs observe that the operative complaint alleges that:

[T]he City's de facto policies, practices, and customs include the following: failing to use reasonable force and not deadly force; failing to properly train, supervise, discipline, transfer, monitor, counsel and otherwise control police officers; failing to appropriately and timely identify serious medical attention needed by Mr. Stephen; failing to timely refer victims like Mr. Stephen for appropriate medical services, despite clear indications of serious need; failing and refusing to adequately and timely communicate critical information regarding Mr. Stephen's unresponsive condition to health care providers; and possessing knowledge of deficiencies in the policies, practices, customs, and procedures concerning detainees like Mr. Stephen and approving and/or deliberately disregarding those deficiencies.

Based on these allegations, Plaintiffs argue that they satisfied the requirement of showing that the municipality was the "moving force" behind the alleged injury because they have alleged that the City "authorized, tolerated, and institutionalized the practices and ratified the illegal conduct that led directly to Mr. Stephen's death." *Horvath*, 946 F.3d at 793.

But Plaintiffs never identified any official or entity with "final policy making authority" other than the City, and they failed to allege that any policy or custom was the "moving force" of a constitutional violation. *Webb*, 925

F.3d at 214; *Horvath*, 946 F.3d at 793. While the complaint does cite rules and regulations that apply to the individual defendants, it does not allege that any specific provision was "the moving force" behind a constitutional violation. *Horvath*, 946 F.3d at 793. By its most charitable reading, the complaint seems to be alleging that the policies (as a whole) are ostensibly deficient because they did not do enough to prevent Stephen's death. Such a broad allegation, without more specificity, is insufficient to establish that these policies were "the moving force" that led to a constitutional violation. *Horvath*, 946 F.3d at 793. Plaintiffs cannot maintain a *Monell* claim merely based on a conclusory allegation that the policy did not regulate enough. And neither did the Plaintiffs sufficiently allege a "widespread practice that is so common and well-settled as to constitute a custom that fairly represents" the City's policy. *Webb*, 925 F.3d at 214. Plaintiffs' allegations are conclusory insofar as they are only based on Stephen's interaction with the individual defendants. The complaint alleges no specific facts or past practices showing a "widespread practice that is so common and well-settled as to constitute a custom." *Id.* Because Plaintiffs failed to allege any policies or custom that were the "moving force" of a constitutional violation, they did not allege sufficient facts supporting any § 1983 liability stemming from the City's policies. *Horvath*, 946 F.3d at 793.

## B.

To succeed on a failure to train claim against the City, Plaintiffs must show three things: "(1) the training . . . procedures of the municipality's policymaker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the . . . training policy, and (3) the inadequate . . . training policy directly caused [Stephen's] injury." *Conner v. Travis Cnty.*, 209 F.3d 794, 796 (5th Cir. 2000) (quoting *Baker v. Putnal,* 75 F.3d 190, 200 (5th Cir. 1996)).

On the first prong, Plaintiffs alleged that the City's training procedure was inadequate because "*five separate officers* failed Mr. Stephen in his time of serious medical need." They argue that the failure of five individual defendants shows that "the need for more training is obvious." But to show that a training procedure is inadequate, the plaintiffs "must allege with specificity how a particular training program is defective." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). As the district court correctly pointed out, Plaintiffs neither identify specific facts about the City's training protocols nor describe any deficiencies that pertain to the individual Defendants' duties. And neither did the complaint allege any fact supporting that the City was either "deliberately indifferent in adopting [a] . . . training policy" or that "the inadequate training directly caused the [Plaintiffs'] injury." *Conner*, 209 F.3d at 796. For these reasons, Plaintiffs' failure to train claim was properly dismissed.

## C.

To state a claim for a municipal liability pursuant to § 1983 by way of ratification, the plaintiffs must show that the "authorized policymakers approve a subordinate's decision and the basis for it." *City of St. Louis v. Prapotnik*, 485 U.S. 112, 127 (1988). Even though "the specific identity of the policymaker" need not be alleged, *Groden v. City of Dallas*, 826 F.3d 280, 285 (5th Cir. 2016), Plaintiffs still need to identify officials or governmental bodies "who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008).

Supporting this theory of liability, Plaintiffs allege that "the City was the authorized policymaker for jail policies," and "the City failed to take any remedial or disciplinary action against the Individual Defendants." Based on

these allegations alone, Plaintiffs contend that they have "alleged sufficient facts to establish . . . the City's ratification of the officers' conduct." But Plaintiffs do not allege sufficient facts to show any "specific official policy" or any "legally authorized policymaker" other than "the City," much less identify that a legally authorized policymaker ratified a policy that violate a constitutional right. *Id.* Neither do they allege specific facts that support an inference that any pertinent policymaker knew of unlawful actions and approved them. Because the complaint failed to state anything more than conclusory allegations on this issue, the district court properly dismissed this claim.

\*     \*     \*

The TTCA claims against the City were properly dismissed because no waiver of immunity applies. As to the § 1983 claims, all claims against the individual defendants were properly dismissed because Plaintiffs failed to allege sufficient facts to overcome qualified immunity. And the § 1983 claims against the City were properly dismissed because the plaintiffs failed to allege sufficient facts to support any municipal liability theory. Accordingly, we AFFIRM.